764 F.2d 576
 119 L.R.R.M. (BNA) 3092, 103 Lab.Cas. P 11,597
 UNITED STEELWORKERS OF AMERICA, AFL-CIO, and Morenci Miners
Union Local 616, United Steelworkers of America,
AFL-CIO, Plaintiffs-Appellants,
v.
PHELPS DODGE CORPORATION, Morenci Branch, Defendant-Appellee.
 No. 84-2019.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 11, 1985.
Decided June 24, 1985.
 
 Paul Whitehead, Pittsburgh, Pa., for plaintiffs-appellants.
 James G. Speer, Evans, Kitchel & Jenkes, P.C., Phoenix, Ariz., for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before SNEED, TANG and CANBY, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 United Steelworkers of America and its local, Morenci Miner's Union No. 616, ("the Union") brought suit in district court under section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185, seeking to compel Phelps Dodge Corporation ("Phelps Dodge") to submit to arbitration of a dispute arising under the parties' collective bargaining agreement. On cross-motions for summary judgment, the district court granted Phelps Dodge's motion and dismissed the case. We affirm the judgment of the district court.
 
 FACTS
 
 2
 The underlying dispute involves the Union's challenge to Phelps Dodge's rehiring of laid off workers to fill positions in divisions other than those where they were previously employed based on criteria other than seniority. Article VI-C of the Continuing Agreement between Phelps Dodge and the Union established the procedure for Phelps Dodge to follow in hiring under such circumstances. It allows consideration of qualifications of applicants in addition to their seniority.[1]
 
 
 3
 In January 1982, Phelps Dodge filled three "other division" vacancies with laid off employees. Phelps Dodge did not, however, pick the three most senior eligible laid off employees. The Company made its employment decisions based on both seniority and the sufficiency of the applicants' qualifications for their new jobs.
 
 
 4
 The Union filed a grievance dated January 20, 1982, alleging misapplication of Article VI-C. The Union's position was that Phelps Dodge should have filled the vacancies with the three most senior laid off employees regardless of their experience or qualifications. Steelworkers pursued the grievance through three stages of the grievance procedure; Phelps Dodge denied the grievance at each stage.
 
 
 5
 On February 23, 1982, the Union appealed the matter to arbitration. Phelps Dodge refused to arbitrate the grievance, relying on the following additional language in Article VI-C:
 
 
 6
 It is understood that the determination of qualifications for hiring pursuant to this paragraph is not subject to the arbitration procedure of this Agreement.[2]
 
 
 7
 The Union's position remained that the underlying dispute was subject to Article VIII-F--Arbitration Procedure,[3] of the agreement, and that provisions within Article VIII-F require that the question of whether a dispute is subject to arbitration and the formulation of questions for arbitration be submitted to an arbitrator.
 
 
 8
 Although Phelps Dodge did agree to submit the question of whether the underlying dispute was subject to arbitration to an arbitrator, the Union insisted on submitting the entire matter. Attempts to agree on questions to submit for arbitration were therefore unavailing, and Steelworkers commenced this action to compel arbitration on September 28, 1982.
 
 
 9
 After hearing argument on cross-motions for summary judgment, Judge Walter Craig stated:
 
 
 10
 I don't find any ambiguity in Sec. VI-C, and I will therefore grant the defendant's motion for summary judgment....
 
 
 11
 (RT p. 7). Accordingly, finding no genuine issue of material fact and that Phelps Dodge was entitled to judgment as a matter of law, the district court entered judgment for defendants on May 1, 1984.
 
 DISCUSSION
 
 12
 Steelworkers assert that as a matter of law, the district court usurped the power of an arbitrator to decide whether the underlying dispute is subject to arbitration. This court reviews the grant of summary judgment de novo. Frederick Meiswinkel, Inc. v. Laborer's Union Local 261, 744 F.2d 1374, 1376 (9th Cir.1984).
 
 
 13
 The firmly entrenched general rule is that: "arbitrability is a matter for the courts to determine." Id. at 1376-77 (citing extensive Supreme Court and Ninth Circuit authorities). The parties to a collective bargaining agreement, however, may agree to submit the question of arbitrability to an arbitrator, because an arbitrator's jurisdiction is rooted in the agreement of the parties. George Day Construction Co., Inc. v. United Brotherhood of Carpenters and Joiners of America, Local 354, 722 F.2d 1471, 1474 (9th Cir.1984). One claiming that the agreement of the parties excludes the question of arbitrability from court determination and refers it solely to an arbitrator bears the burden of a clear demonstration of that purpose. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409 (1960).
 
 
 14
 Steelworkers contends that it has made such a clear showing. We reject this contention. Although the express language of Article VIII-F(1)(d) supports the Union's position, we agree with the district court's conclusion that the language of Article VI-C expressly excludes disputes arising under the applicable paragraph from, "the arbitration procedure of this Agreement." Article VIII-F is explicitly titled "Arbitration Procedure." We find that the language of the exception in VI-C clearly excepts the pertinent VI-C disputes from all of the provisions under Article VIII-F. This, of course, includes Article VIII-F(d) which provides that either party may submit to an arbitrator the question of whether a particular dispute is subject to arbitration.[4] The general rule that courts decide arbitrability therefore applies in this case; the district court did not usurp the power of an arbitrator in deciding whether the VI-C issue was arbitrable.[5]
 
 
 15
 The Union asserts that even if the district court properly reached the issue of arbitrability, it erred in holding that the underlying dispute was not subject to arbitration. In United Steelworkers v. Warrior & Gulf, 363 U.S. at 582-83, 80 S.Ct. at 1352-53, the Supreme Court set out the standards for determining whether a dispute under a collective bargaining agreement is subject to arbitration. In Section 301 actions, the district court should not deny an order to arbitrate:
 
 
 16
 "... unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
 
 
 17
 Id. The Court recognized, however, that arbitration is a matter of contract and therefore the court should not require arbitration of a dispute which a party has not agreed to submit. Id.
 
 
 18
 The critical issue, then, is whether the exclusion in Article VI-C is effective in this case. In light of the Warrior & Gulf standard, a clause purporting to exclude certain types of disputes from arbitration must be clear and unambiguous. Communications Workers of America, (AFL-CIO) v. New York Telephone Company, 327 F.2d 94, 96 (2d Cir.1964).
 
 
 19
 Despite Steelworkers assertion that the exclusion articulated in Article VI-C is ambiguous because of the phrase "determination of qualifications for hiring", we find that the plain language of Article VI-C, read as a whole, does not support their contention. It provides that "the determination of qualifications for hiring ... is not subject to the arbitration procedure.... However, ... the alleged discriminatory application ... with respect to any laid-off person ... because of race, creed, color, sex, national origin, or membership in the union shall be subject to the arbitration procedure of this Agreement." The same paragraph of the Agreement expressly includes certain hiring disputes, involving laid-off workers, within the arbitration procedure while expressly excluding others. We find that the exclusion clause read in context of the entire paragraph, clearly and unambiguously excludes the hiring decisions challenged in the present case from the arbitration procedure in Article VIII. Accordingly, the judgment of the district court is
 
 
 20
 AFFIRMED.
 
 CANBY, Circuit Judge, dissenting:
 
 21
 With all respect, I cannot agree that it was proper for the district court to decide that the underlying dispute was not arbitrable. In my view, the collective bargaining agreement provides for the arbitrator, not the court, to decide the question of arbitrability.
 
 
 22
 The entrenched rule that "arbitrability is a matter for courts to determine," Frederick Meiswinkel, Inc. v. Laborers' Union Local 261, 744 F.2d 1374, 1376 (9th Cir.1984), applies only "in the absence of a specific agreement to the contrary." Id. As the majority opinion indicates, the agreement in this case does provide in Article VIII-F(1)(d) that either party may submit to the arbitrator the question whether the matter appealed to arbitration is arbitrable. That provision places the issue of arbitrability in the hands of the arbitrator, not the courts, at least when either party wishes it there.
 
 
 23
 The majority opinion holds, however, that arbitrability of the underlying dispute is not to be submitted to an arbitrator because the dispute arises under Article VI-C, and that article provides that "the determination of qualifications for hiring pursuant to this paragraph is not subject to the arbitration procedure of this Agreement."
 
 
 24
 The majority's resolution of this issue constitutes, I fear, a case of confusing the merits of an issue--here, whether a dispute is arbitrable--with the question of who has jurisdiction to decide the matter. Article VIII of the agreement, which governs the grievance and arbitration procedures, provides that a grievance (which may be appealed to arbitration) is a dispute over an action "claimed to involve a misapplicaton of any provision of this Agreement."[1] Article VIII-A. If the arbitrator has power to decide questions arising under any provision of the agreement, and also has power to decide the issue of arbitrability, then the arbitrator must have power to decide whether a dispute arising under Article VI-C is arbitrable. Perhaps, as the majority holds, the dispute is not arbitrable, but that is for the arbitrator to decide.
 
 
 25
 I recognize that the difference between the majority's view of the agreement and my view may seem to depend upon which Article marks the starting point of analysis. The majority starts with Article VI-C and finds in it a provision that renders Article VIII inapplicable. I begin with Article VIII and find that it empowers the arbitrator to rule upon issues arising under all of the other articles, including issues of arbitrability.
 
 
 26
 The two diverging outcomes, however, are not equally reflective of the thrust of the bargaining agreement. The parties to this agreement gave unusually broad powers to the arbitrator. The arbitrator is even empowered to formulate the question to be arbitrated, when the parties are unable to agree on a formulation. Article VIII-F(1)(c). That provision, like the provision empowering the arbitrator to decide the issue of arbitrability, suggests an intent that the grievance and arbitration procedures be interpreted and administered expansively. The same spirit is embodied in Article VIII-A, which provides that "[n]either an incident which leads to a grievance nor the settlement of a grievance shall be considered a breach of the ... Agreement subjecting either party to a suit in the courts but shall be finally and exclusively disposed of as provided in this article." It best comports with this spirit to allow the arbitrator free reign in applying the whole agreement. The arbitrator can then decide whether the dispute is one that is arbitrable, or whether it falls within one of the half-dozen or so exclusions or limitations upon arbitrability that are scattered throughout the agreement.[2] Interpretation of at least some of those exclusions or limitations is quite likely to call upon the same kind of "shop knowledge" that an arbitrator would employ in formulating questions for decision. I believe that the parties left both subjects to the arbitrator. I therefore respectfully dissent.
 
 
 
 [1]
 The paragraph reads in part, "Persons laid off from a particular division because of a reduction of forces may apply to the Employment Agent for employment in occupational classifications represented by the Union in other divisions of the Company.... They shall be given preference in order of their branch seniority dates when the company hires within one of said other divisions; provided however, any such person shall meet the employment standards of the Company equally as well in all respects as another applicant for employment...."
 
 
 [2]
 The provision continues: "However, it is understood that the alleged discriminatory application of this paragraph by the Company with respect to any laid-off person because of race, creed, color, sex, national origin, or membership in the Union shall be subject to the arbitration procedure of this Agreement."
 
 
 [3]
 The applicable provisions of Article VIII-F read:
 
 
 [1]
 Arbitration Questions
 (a) Questions Arbitrable.
 A decision of the Manager may be appealed as stated in Section D, Subsection 5 of this article by invoking arbitration within fifteen days of the decision, or within 15 days of the date the decision was due if the Manager fails to render a decision. As a prerequisite, however, the original grievance shall have been processed through the grievance procedure heretofore set forth in this article.
 * * *
 (c) Formulation of Question.
 * * *
 If the parties have failed to agree on the formulation of the questions by the fifteenth day following the decision appealed from, then the task of formulating the questions will be submitted to the Arbitrator ...
 (d) Question Whether Matter is Arbitrable.
 Either party may submit as a separate question to be answered "Yes" or "No" the question of whether or not the matter appealed to arbitration is arbitrable.
 
 
 [4]
 We are aware that the agreement grants broad powers to the arbitrator as stressed by the dissent. We find, however, that the language of Article VI-C excepting applicable disputes from "the arbitration procedure of this agreement " was clearly intended to make all of the provisions of Article VIII-C inapplicable to the specified disputes. (emphasis added). Had Article VI-C excepted disputes from "arbitration," we might be persuaded that Article VIII-F(d) would control
 
 
 [5]
 Additionally, we note that Phelps Dodge's previous offer to submit this issue to arbitration is not binding. It was rejected by the Union
 
 
 [1]
 The only exceptions to this broad definition are claims of breaches of the agreement by strike or lockout. Those exceptions are not relevant here
 
 
 [2]
 Article VI-C (provision in issue here; also: no appeal for discharge of probationary employee, with exception for certain types of discrimination); Article VI-E (relative qualifications of applicants for interdepartmental job transfers not subject to arbitration); Article VIII-A (complaints concerning medical care excluded from arbitration procedure); Article VIII-F(b) (questions involving changes in rate of pay schedule or in provisions of Agreement not subject to arbitration); Article IX-A (discharge for violation of no-strike clause subject to grievance procedure only as to determination of question of violation)