Charles A. **STEWART**, Petitioner,

*v.*

**UNITED STATES POSTAL SERVICE**, Respondent.

No. 90–3382.

United States Court of Appeals,
Federal Circuit.

Feb. 21, 1991.

Cornelius J. Sullivan, Mattapan, Mass., argued for petitioner.

Robert P. Sinderman, Jr., Office of Labor Law, U.S. Postal Service, of Washington, D.C., argued for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Jesse L. Butler, Asst. Gen. Counsel.

Before RICH, MAYER and LOURIE, Circuit Judges.

MAYER, Circuit Judge.

### OPINION

Charles A. Stewart appeals the May 3, 1990, final decision of the Merit Systems Protection Board in docket number BN07529010006. The board dismissed the appeal of his removal from the United States Postal Service because it found that he had waived his appeal rights in a "last chance" settlement agreement. *See* 44 M.S.P.R. 687 (1990) (table). We vacate and remand.

## Background

Stewart entered the second of two "last chance" settlement agreements with the Postal Service on March 10, 1989. The agency agreed to hold a removal proposed for March 24, 1989, in abeyance for one year. For his part, Stewart agreed

that the original Notice of Removal was issued for just cause. Mr. Stewart will incur no more than eight (8) unscheduled absences, or a total not in excess of 48 hours of unscheduled absences, during the abeyance period.... It is agreed that violation of this stipulation will result in the immediate re-imposition of this Removal, *without further Right of Appeal in any Form.* [Emphasis added.]

The agency had proposed the March 24 removal for violation of an earlier last chance agreement, entered March 7, 1988, in which the Postal Service had agreed to hold in abeyance for one year a removal originally proposed in January of 1988. The first agreement required that Stewart "substantiate with administratively acceptable evidence all unscheduled absences"; that he not be absent without official leave; and that he be regular in attendance. It also stated that, in the event Stewart violated any of the agreement's provisions and the agency reimposed his removal, he would "have no right of appeal through the grievance/arbitration procedure, the Equal Employment Opportunity complaint system, or the Merit Systems Protection Board."

The agency determined that, much as Stewart had violated the first last chance agreement by failing to be regular in attendance, he violated the second one by accumulating excessive unscheduled absences from April 14 through July 21 of 1989. Accordingly, citing 49.93 hours of unscheduled absences, it reimposed Stewart's removal on August 24. Stewart incurred sixteen of the unscheduled hours on July 5 and 6. The events of July 5, in particular, are central to this case.

All agree that on July 5 at 2:30 p.m.—several hours before the scheduled start of his workday—Stewart underwent an eye

examination with Dr. Ralph Levoy of the Harvard Community Health Center. Stewart expected the exam to be routine and that he would be at work on time. He was not. As Dr. Levoy explained in a September 14 letter to the agency:

Patient Charles Stewart was examined by me on Wednesday July 5th at 2:30 p.m. He was expecting a routine eye exam which would have taken twenty minutes, instead when he presented with 20/200 vision in his right eye, I had to dilate him and we then found him to have a huge retinal detachment in the right eye along with a retinal detachment and tears in the left eye. Since he had already lost his central vision in his right eye, *getting him to a retinal specialist was necessary and urgent. I called Mr. Spellman [Stewart's temporary supervisor; his regular supervisor was on vacation] and requested that Mr. Stewart be excused and that I had scheduled him to see a specialist the next day. Mr. Spellman said he understood* and in fact discussed his own eye problems with me.

*Mr. Stewart couldn't possibly have known what he was in for when he came in for a routine exam.* The following day [July 6] Dr. Pinnolis examined Mr. Stewart and diagnosed bilateral retinal detachments and scheduled Mr. Stewart for retinal surgery on August 4th and 18th.

Retinal detachments are sight threatening and in Mr. Stewart's case, he already has severe damage to his right eye.

In my opinion any employer should be understanding of urgent unfortunate circumstances as with this situation. [Emphasis added.]

Unfortunately for Stewart, the agency counted both the eight hours missed on July 5 at the insistence of Dr. Levoy and the eight hours missed on July 6 as unscheduled and unexcused. When by July 21 Stewart had exceeded the 48 hour limit specified in the second last chance agreement by 1.93 hours, the agency reimposed his removal.

**1148**

Stewart appealed to the board. The agency moved to dismiss based on his breach of the last chance agreement and the waiver of appeal rights it contained. Stewart responded personally by letter dated November 15:

> I finally saw a doctor on July 5th 1989 and he discovered severe damage in my right eye and also damage to my left eye, probably from the blow to my head 6 months before. I have lost most of the sight in my right eye and I'm having my left eye operated on this Friday. My doctor called my supervisor who was on vacation and instead talked to General Supervisor Don Spellman on July 5. He told him the problem and advised him the [sic] I would be out the next day also to see a specialist. Mr. Spellman said he understood and would take care of it. If they say they weren't notified about July 5th then certainly when the doctor told him about July 6th that would constitute a Request or Notification of Absence.

Apparently ignoring this portion of the response, the board issued an order on November 22 giving Stewart ten days "to show cause why his appeal should not be dismissed due to his waiver of his appeal rights."

Stewart again responded, via a December 1 motion and accompanying affidavit, that he did not breach the last chance agreement. The motion clearly says that Stewart "was not in violation of his last chance agreement since Doctor Ralph Levoy spoke to Mr. Stewart's supervisor." In paragraph twenty-three of the affidavit Stewart states, "I believe that I complied with [section 666.82 of the agency's Employee and Labor Relations Manual, covering absence due to emergency] through my Doctors [sic] telephone call and his subsequent letter of September 14, 1989."

Nevertheless, the administrative judge who issued the board's initial decision enforced the waiver stipulation and dismissed Stewart's appeal for lack of jurisdiction. The judge declined to hold a hearing on any issues though requested by Stewart to do so. Her written decision ignores Stewart's argument that his absences on July 5 and 6 should be excused and accepts without comment the agency's allegation of breach. The entire relevant discussion is: "On August 24, 1989, the agency re-imposed the removal because the appellant had failed to abide by the last chance agreement and he had failed to be regular in attendance."

In his petition for review before the board, Stewart again claimed that he did not violate the last chance agreement because he complied with the agency's emergency absence regulation. When the board summarily denied review, Stewart appealed here.

### Discussion

 If Stewart in fact breached the last chance settlement agreement, we agree with the board that the waiver of appeal rights the agreement contains is enforceable because he freely entered into it. *See McCall v. United States Postal Serv.*, 839 F.2d 664, 666–67 (Fed.Cir.1988). But we do not understand the board's refusal to address the threshold issue of breach. The last chance agreement predicates the reimposition of removal and concomitant waiver of appeal rights on breach of one or more of the other stipulations the agreement contains. Where, as here, an employee raises a non-frivolous factual issue of compliance with a last chance agreement, the board must resolve that issue *before* addressing the scope and applicability of the appeal rights waiver.* *See id.* at 666 ("Additionally, the [administrative judge] found that McCall breached the provision of the settlement agreement which

---

\* The waiver at issue here applies only to the facts underlying and the legal validity of the original removal. Stewart did not waive his right to contest breach of the agreement itself. We express no opinion whether an agency could require an employee to waive even this right and still successfully enforce the agreement. *Cf. McCall*, 839 F.2d at 667 ("We think it is implicit in the agreement here that the agency must abide by it in good faith. Thus, the agreement itself serves as a check on arbitrary agency action. If an agency acts in bad faith or takes other arbitrary or capricious action, as a breaching party it would not be able to enforce the agreement").

required that he maintain satisfactory attendance").

The facts of record support Stewart's argument. The relevant agency attendance regulation provides, "In emergencies, the supervisor or proper official will be notified as soon as the inability to report for duty becomes apparent. Satisfactory evidence of the emergency must be furnished later." United States Postal Service, *Employee & Labor Relations Manual* § 666.82 (1989); *see* 39 C.F.R. § 211.2(a)(2) (1990). Dr. Levoy's phone call to Supervisor Spellman on July 5 and follow-up letter of September 14 may comply with the regulation. At least, they constitute a good faith attempt to do so. Stewart's affidavit likewise bolsters his claim of medical emergency on July 5 and 6. The agency offered in rebuttal only an October 24, 1989, memorandum of Tour Superintendent Ziniti, which purports to recount the substance of an early September conversation with Stewart about the events of July 5 and 6. Ziniti's recollection is at odds with the letter of Dr. Levoy and the affidavit of Stewart.

■ Because the government concedes, as it must, that emergency absences do not count toward the 48 hours of unscheduled absences allowed under the second last chance settlement agreement, on balance, this record presents a legitimate factual issue of whether there was a breach. We think the board must first decide whether Stewart breached the agreement; only if he has, should it consider the enforceability of his appeal waiver. Though "[t]here is no statutory authority requiring the [board] to hold a hearing on the threshold issue of jurisdiction," *Manning v. Merit Systems Protection Bd.*, 742 F.2d 1424, 1427 (Fed.Cir.1984), "it would be appropriate for the [board] to honor a request for hearing where petitioner's allegations raise non-frivolous issues of fact relating to jurisdiction which cannot be resolved simply on submissions of documentary evidence." *Id.* at 1428; *McCall*, 839 F.2d at 669.

### Conclusion

Accordingly, the decision of the board is vacated and the case is remanded for further proceedings consistent with this opinion.

### COSTS

The United States Postal Service will bear the costs of this appeal.

**VACATED AND REMANDED.**