**UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC United Steelworkers of America, Local Union No. 1165, Appellants,**

**v.**

**LUKENS STEEL COMPANY, DIVISION OF LUKENS, INC.**

**Nos. 91–1540, 91–1614 and 91–1636.**

United States Court of Appeals, Third Circuit.

Argued Feb. 4, 1992.

Decided July 8, 1992.

Rehearing and Rehearing In Banc Denied July 31, 1992.

---

Deborah C. Malamud (argued), Mady Gilson, Bredhoff & Kaiser, Washington, D.C., for appellants.

Raymond A. Kresge (argued), J. Anthony Messina, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.

Before: BECKER and ROTH, Circuit Judges and McCUNE, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

"Last chance agreements," a relatively recent development in labor-management relations, provide for the conditional reinstatement of an employee who faces discharge or serious disciplinary action for violating a work rule. In these agreements, an employer agrees to withdraw the threat of discipline in return for the employee's promise to refrain from further infractions and to waive certain procedural rules regarding the grievance and arbitration process in the event that the employee commits another infraction. See *United States Dept. of Air Force v. Federal Labor Relations Authority*, 949 F.2d 475, 478 (D.C.Cir.1991) (describing last chance agreements). These consolidated appeals require us to decide whether last chance agreements between defendant Lukens Steel Company ("Lukens" or "the Company"), three of its former employees, Earvin Smith, Theodore Tinsley, and James Meyer ("the employees"), and the employees' collective bargaining representatives, the United Steelworkers of America, AFL–CIO–CLC and the United Steelworkers of America, Local 1165 (collectively, the "Union"), bar arbitration of grievances filed by the Union on the employees' behalf.

The district court granted summary judgment for Lukens in each of three suits seeking to compel arbitration of the grievances. For the reasons that follow, we hold that the agreements do not bar arbitration. Accordingly, we will reverse the summary judgment entered in favor of Lukens in each case and direct the district court to enter summary judgment for the Union.

## I. FACTS AND PROCEDURAL HISTORY

Smith, Tinsley, and Meyer were hourly employees covered by a collective bargaining agreement ("the Labor Agreement") between the Union and Lukens. The Labor Agreement permits the Company to suspend or discharge employees only for just cause and establishes grievance and arbitration procedures governing suspension and discharge. The Labor Agreement also provides that an employee shall be suspended for up to five days when Lukens suspects that his or her conduct warrants discharge. During the suspension period, the Disciplinary Committee, consisting entirely of the Company's representatives, holds a hearing at which "the facts concerning the case [are] made available to both parties." On the basis of that hearing, the Company then decides "whether the suspension shall be affirmed, modified, extended, revoked, or converted into a discharge."

The employee may challenge the Company's decision by filing a grievance. If the grievance is not resolved through meetings between the Company's representatives and the Union, either party may submit the case to arbitration before a member of a jointly-selected, eleven-member panel of arbitrators. Under the Labor Agreement, the arbitrator's decision is final and binding.

Smith, Tinsley, and Meyer each tested positive for drug use at least once, thereby violating Rule 12, a work rule that prohibits employees from having illegal drugs in their systems while at work. In lieu of discharge, each signed a conditional reinstatement agreement, denominated a "Last Chance Agreement." Each was later discharged for allegedly violating that Agreement. When the employees attempted to grieve their discharges, Lukens refused, claiming that the Last Chance Agreements precluded the employees from pursuing the grievance and arbitration procedures established in the Labor Agreement.

Pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 (1988), the Union filed a suit

---

* The Honorable Barron P. McCune, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

in the district court for the Eastern District of Pennsylvania on behalf of each employee to compel arbitration. The district court had subject-matter jurisdiction under 28 U.S.C. § 1337 (1988). On cross-motions for summary judgment, the district court held in each case that the Last Chance Agreement expressly excluded the dispute from the grievance and arbitration procedure. Accordingly, it granted summary judgment for Lukens.

The three cases were consolidated for this appeal. Our jurisdiction is founded upon 28 U.S.C. § 1291 (1988). We exercise plenary review over the district court's construction of the Last Chance Agreements. *United States on behalf of The Small Business Administration v. Richardson*, 889 F.2d 37, 40 (3d Cir.1989).

Neither party disputes the material facts. We set forth the facts of each case separately.

### A. *Earvin Smith*

In November 1986, Smith violated Rule 12 and was suspended "with intent to discharge," the first step in the process of dismissing an hourly employee under the terms of the Labor Agreement. Shortly thereafter, Lukens reached an oral agreement with the Union and Smith to reinstate Smith on a "last-chance basis." On September 25, 1989, a urine sample that Smith had provided at work in connection with a routine medical examination tested positive for marijuana. Accordingly, on October 2, 1989, Lukens again placed Smith on suspension with intent to discharge.

At an internal disciplinary hearing held on October 4, 1989, Smith claimed that the seeds and herbs that he consumes as part of his vegetarian diet caused the positive test result. Rejecting this explanation, the Company affirmed the suspension, but agreed to reinstate Smith contingent upon a written Last Chance Agreement.

That Agreement provided that Smith would be subject to random testing for alcohol and controlled illegal substances, and that he would be suspended with intent to discharge if he had alcohol or illegal controlled substances in his system while at work, violated any Company rule relating to drugs or alcohol, or violated any other Company rule ordinarily punishable by a "time off suspension." Article 4 of the Last Chance Agreement, the provision crucial to this case, stated that if Smith were suspended for violating one of these conditions,

> he will be afforded an opportunity to plead his case before the Disciplinary Committee. The disposition of the Disciplinary Committee shall be final. Neither Mr. Smith nor the Union shall have recourse through the arbitration/grievance procedure to protest the suspension or disposition invoked by the Disciplinary Committee.[1]

**1.** The Agreement provided in full:

This agreement is offered by the Company as a last chance opportunity for Mr. Smith to prove himself as a valued employee of Lukens Steel Company. The following conditions will apply:

1. Mr. Smith's 5–day suspension is affirmed for violation of Company Rule 12.

2. Mr. Smith will be subject to random testing for the presence of alcohol or controlled illegal substances in his system. The presence of alcohol or any illegal controlled substance in his system while at work and/or the violation of any Company rule pertaining to alcohol or drugs will result in Mr. Smith's immediate suspension with intent to discharge.

3. Violations of any other Company rules which would result in a time off suspension will result in an immediate 5–day suspension with intent to discharge.

4. Should Mr. Smith be placed on a 5–day suspension subject to discharge for violations in Article 2 and 3 of this agreement, he will be afforded an opportunity to plead his case before the Disciplinary Committee. The disposition of the Disciplinary Committee shall be final. Neither Mr. Smith nor the Union shall have recourse through the arbitration/grievance procedure to protest the suspension or disposition invoked by the Disciplinary Committee.

5. The conditions, specific to Company rules pertaining to alcohol and drugs, will remain in effect for the remainder of Mr. Smith's working life at Lukens Steel Company. The conditions regarding violations of any other Company rules resulting in a time off suspension will remain in effect for 3 years from the date of this agreement.

The parties agree that by entering into this agreement, neither the Company nor the Union will cite this case as precedent in any other grievance or arbitration hearings. The

On March 8, 1990, Smith again tested positive for marijuana use. In response, Lukens placed Smith on five-day suspension with intent to discharge. At the March 19, 1990 meeting of the Disciplinary Committee, Smith repeated his claim that the positive test result was caused by his diet. The Disciplinary Committee refused to credit this explanation, however, and Lukens converted his suspension to a discharge. The Union attempted to grieve Smith's suspension and his discharge, but Lukens refused to accept the grievances for processing because, in its view, Article 4 of the Last Chance Agreement precluded Smith from pursuing the grievance and arbitration procedure.

### B. *Theodore Tinsley*

Tinsley had a history of violating Rule 12 and had twice been suspended for intoxication at work. On November 9, 1989, Tinsley provided a urine sample in connection with a routine medical examination. When the sample tested positive for a by-product of cocaine, Lukens placed Tinsley on a five-day suspension with intent to discharge. After signing a Last Chance Agreement, Tinsley returned to work on November 17, 1989.

The Agreement Tinsley signed is substantially similar to the Agreement Smith signed. Like the Smith Agreement, it provided that Tinsley would be subject to random drug testing, and it prohibited him from having alcohol or illegal drugs in his system while at work and from violating any Company rule relating to drugs or alcohol. Most importantly, Article 3 of the Tinsley Agreement contained the same crucial language as Article 4 of the Smith

Agreement. The only substantive difference between the two Agreements is that the Tinsley Agreement did not provide that violation of any other Company rule punishable by a "time off suspension" would also constitute a violation of the Agreement. See Article 3 of the Smith Agreement, set forth in note 1.

On August 3, 1990, Lukens asked Tinsley to provide a urine sample for drug testing. Tinsley refused, explained that illness prevented him from providing a sample, and requested to see the company doctor, who was not on duty at the time. Treating Tinsley's refusal to provide a urine specimen as a violation of the Last Chance Agreement, Lukens placed Tinsley on five-day suspension subject to discharge.

At the August 16, 1990 meeting of the Disciplinary Committee, Tinsley repeated his explanation of his inability to provide a urine sample, but the Committee declined to accept his explanation and Lukens converted the suspension to a discharge. When the Union attempted to grieve Tinsley's suspension and discharge, Lukens refused to accept the grievances, claiming that the Last Chance Agreement precluded Tinsley from recourse to the grievance and arbitration procedure.[2]

### C. *James Meyer*

On May 7, 1990, Lukens suspended Meyer with intent to discharge after his urine tested positive for a by-product of marijuana. He returned to work after signing a Last Chance Agreement that contained the same language as Article 4 of the Smith Agreement and Article 3 of the Tinsley Agreement. See page 1471.[3]

---

following signatures [of Smith, the Chairman of the Union Grievance Committee, and the Company's Industrial Relations Manager] indicate written acceptance of this conditional reinstatement of employment.

2. The Union also attempted to grieve Lukens's failure to reinstate Tinsley pending final resolution of his case through arbitration and its failure to provide him medical assistance on August 3, 1990. Those grievances were also refused.

3. The Meyer Agreement is substantially similar to the other two Agreements, except that:

(1) In contrast to the Smith Agreement, and like the Tinsley Agreement, the Meyer Agreement did not provide that violation of any Company rule unrelated to drugs and alcohol, but punishable by a "time off suspension," would constitute a violation of the Agreement. (2) The Smith and Tinsley Agreements stated that the employee would be subject to random drug testing, but did not specify a testing method; the Meyer Agreement specified that Meyer would be subject to random urinalysis and breathalyzer testing. (3) The Meyer Agreement, unlike the other two, also stated that:

When a urine sample that Meyer provided on September 24, 1990 tested positive for marijuana, Lukens placed him on five-day suspension with intent to discharge. At the October 2, 1990 meeting before the Disciplinary Committee, Meyer denied that he had used marijuana and explained that he had attended a party at which others were smoking it. The Committee rejected this explanation and Lukens converted his suspension to a discharge. When the Union attempted to grieve the suspension and discharge on Meyer's behalf, the Company refused, again taking the position that the Last Chance Agreement barred recourse to the arbitration and grievance procedure.

## II. DISCUSSION

### A. *Overview of the parties' arguments*

The critical language of the Last Chance Agreements bears repeating at this point. Each Agreement stated that if the employee were suspended for violating a condition of the Agreement,

> he will be afforded an opportunity to plead his case before the Disciplinary Committee. The disposition of the Disciplinary Committee shall be final. Neither [the employee] nor the Union shall have recourse through the arbitration/grievance procedure to protest the suspension or disposition invoked by the Disciplinary Committee.

Lukens contends that this language clearly and unambiguously precludes the employees from grieving their discharges. Once an employee is suspended for violating the Agreement, Lukens argues, he receives a chance to contest the suspension before the Disciplinary Committee. Because the Agreement grants the Committee authority to render a final disposition, Lukens continues, it necessarily empowers the Committee to decide whether the suspen-

> If Mr. Meyer at anytime refuses to either provide a urine specimen during random urinalysis testing or refuses a random breathalyzer test, such refusal will be considered an admission of guilt and a positive test result in violation of Rule 12 and this Last Chance Agreement, resulting in Mr. Meyer's immediate suspension with intent to discharge.

sion was justified on the merits. Finally, Lukens observes, the Agreement expressly states that neither the Union nor the employee may challenge the Committee's disposition through the grievance and arbitration procedure.

The Union concedes that the employees waived some portion of their rights to arbitration by signing the Last Chance Agreements, but disputes the extent of that waiver. Specifically, the Union submits that before arbitration is waived, someone must first determine whether the employee has violated a condition of the Agreement. Under this approach, once an employee has been found in violation, the waiver then operates merely to preclude him from challenging the penalty imposed by the Committee. Because the Agreement fails to specify who is to make the initial determination whether the employee has committed a violation, the Union's argument continues, it therefore does not preclude the employees from using the grievance and arbitration procedures to resolve this threshold question.

### B. *The presumption of arbitrability and its applicability here*

Our analysis of these arguments is guided by the basic principles first established by the Supreme Court in a series of cases known as the *Steelworkers Trilogy*,[4] and then restated in *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (*"AT & T"*). First, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit,' " *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418, quoting *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353. Second, "[u]nless the parties clearly and unmistak-

---

**4.** The *Trilogy* consists of *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (*"American Mfg. Co."*); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) (*"Warrior & Gulf"*); and *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

ably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1418. See also *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964). Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T,* 475 U.S. at 649, 106 S.Ct. at 1419. See also *American Mfg. Co.,* 363 U.S. at 568, 80 S.Ct. at 1346 (1960). Fourth, and most significantly for this case,

> where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419, quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53.

Lukens contends that *United Mine Workers of America v. Barnes & Tucker Co.,* 561 F.2d 1093 (3d Cir.1977), counsels against applying the presumption of arbitrability here. *Barnes* arose when a union sued to obtain specific enforcement of certain grievance settlements between it and the company. The company argued that only arbitration awards, and not settlement agreements, are enforceable under section 301. We disagreed, stating that "where a collective bargaining agreement designates settlement agreements as being final and binding, the fact that a settled grievance does not proceed to arbitration does not preclude judicial enforcement of the settlement agreement." Id. at 1096. We further stated:

> It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their dif-

ferences, federal labor policy encourages that procedure no less than arbitration. Id.

■ In relying on *Barnes,* Lukens assumes that the parties have chosen a hearing before the Disciplinary Committee as the means of determining whether an employee has violated the Last Chance Agreement. But Lukens assumes away the issue, for the very task before us is to ascertain what method the parties have selected for resolving their disputes. When, as here, the collective bargaining agreement contains a broad grievance and arbitration clause, the presumption of arbitrability applies—we presume that the parties chose arbitration. See *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419; *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53. See also *Morristown Daily Record, Inc. v. Graphic Communications Union, Local 8N,* 832 F.2d 31, 34–35 (3d Cir.1987).

Lukens also cites *Haynes v. United States Pipe & Foundry Co.,* 362 F.2d 414 (5th Cir.1966), but that case does not persuade us against applying the presumption of arbitrability. *Haynes* involved a collective bargaining agreement that permitted the union to strike if it remained dissatisfied after exhausting the grievance procedure. Construing this agreement, the Fifth Circuit held that if the union decided not to strike, the employee was barred from suing in federal court.

*Haynes* is easily distinguishable because, unlike the Labor Agreement between Lukens and the Union, the collective bargaining agreement in that case did not contain an arbitration clause, see 362 F.2d at 417. As we have already noted, it is the inclusion of an arbitration clause that gives rise to the presumption of arbitrability. Moreover, the Supreme Court has expressly rejected *Haynes.* See *Groves v. Ring Screw Works,* 498 U.S. 168, 111 S.Ct. 498, 500 n. 1, 112 L.Ed.2d 508 (1990). *Groves,* like *Haynes,* involved collective bargaining agreements that permitted the union to strike after exhausting the grievance procedure. The Sixth Circuit, consistent with *Haynes,* held that the agreements precluded employees from bring suit under section

301 because they made the union's right to strike the exclusive method of resolving disputes. The Supreme Court disagreed, reasoning that "under § 301, as in other areas of the law, there is a strong presumption that favors access to a neutral forum for the peaceful resolution of disputes." 498 U.S. at ——, 111 S.Ct. at 502.

Our application of the presumption of arbitrability is also fully consistent with *Bechtel Corp. v. Local 215, Laborers' International Union of North America, AFL–CIO*, 544 F.2d 1207 (3d Cir.1976), another case relied upon by Lukens. In *Bechtel*, the company sought damages for a work stoppage arising from a jurisdictional dispute between two unions. The company was party to two collective bargaining agreements. Its agreement with the local excluded both damages claims and jurisdictional disputes from arbitration, yet its agreement with the national excluded only jurisdictional disputes. We decided that the national agreement prevailed because it was executed after the local agreement and, accordingly, we held that the damages claim was arbitrable. Id. at 1212–13.

Lukens focuses on the portion of the opinion in which we also held that the arbitrator was barred from deciding the underlying jurisdictional dispute. We find this focus unpersuasive, however, because in *Bechtel* we noted that both collective bargaining agreements contained clear language excluding jurisdictional disputes from arbitration, id. at 1213. As we explain at pages 1476–77, we do not find the language of the Last Chance Agreements clear and unambiguous.

Having concluded that the presumption in favor of arbitrability applies, we now consider whether that presumption has been overcome.

## C. *Overcoming the presumption*

■ The presumption of arbitrability may be overcome if the collective bargaining agreement contains an " 'an express provision excluding a particular grievance from arbitration,' " *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419, quoting *Warrior &*

*Gulf*, 363 U.S. at 584–85, 80 S.Ct. at 1353–54. Lukens cites no provision of the Labor Agreement purporting to exclude the grievances at issue from arbitration; rather, it submits that they are excluded by the Last Chance Agreements. Settlement agreements (such as the Last Chance Agreements) between parties to a collective bargaining agreement containing a broad arbitration clause are arbitrable when the underlying disputes are arbitrable, except when the parties expressly exclude the settlement agreements from arbitration. *Niro v. Fearn International, Inc.*, 827 F.2d 173, 175 (7th Cir.1987). But when there is no express exclusion, " '*only the most forceful evidence* of a purpose to exclude the claim from arbitration can prevail.' " *AT & T*, 475 U.S. at 650, 106 S.Ct. at 1419, quoting *Warrior & Gulf*, 363 U.S. at 584–85, 80 S.Ct. at 1353–54 (emphasis added). The party contesting the presumption of arbitrability bears the burden of producing "strong and forceful" evidence of an intention to exclude the matter from arbitration. See *Morristown Daily Record*, 832 F.2d at 35.

Thus, in order to overcome the presumption of arbitrability, Lukens must show (1) that the Agreements expressly exclude the disputes from arbitration or (2) the existence of "strong and forceful" evidence of an intention to exclude them from arbitration. We hold that Lukens has failed to satisfy either of these rigorous tests.

### 1. *Express exclusion*

Each Agreement states that the employee "will be afforded an opportunity to plead his case before the Disciplinary Committee." Lukens contends that this language refers to a chance to contest whether the employee violated the Agreement. Lukens also observes that the Agreements provide that "[n]either [the employee] nor the Union shall have recourse through the arbitration/grievance procedure to protest the suspension or disposition invoked by the Disciplinary Committee." In Lukens's view, the Committee's power to determine the "disposition" appropriate for violating the Agreements also includes the power to

make the threshold determination that a violation has occurred.

In our view, the Agreements clearly preclude an employee who has violated the Agreement from arbitrating the penalty imposed by the Disciplinary Committee. As the Union correctly observes, however, the language of the Agreements does not specifically state who is to decide the threshold question whether an employee has in fact committed a violation. We find the language the Agreements do contain to be equally consistent with both parties' positions. The employee's "opportunity to plead his case" need not refer to a chance to contest whether the employee has violated the Agreement. Instead, as the Union contends, it could also refer to a chance to contest the Committee's choice of a penalty once the arbitrator has determined that a violation has occurred. Similarly, the Committee's power to determine the "disposition" of an employee's case does not necessarily encompass the threshold issue of ascertaining whether the employee has violated the Agreement. Rather, as the Union submits, it could merely refer to the power to choose the appropriate penalty once the arbitrator has found a violation.

To accept Lukens's interpretation of the Agreements, we would have to assume that the employee's "opportunity to plead his case" before the Disciplinary Committee and the Committee's power to determine a "disposition" encompass the threshold issue of ascertaining whether the employee has violated the Agreement. But nothing

prevented Lukens from using language that clearly and unambiguously described the issue or issues excluded from arbitration.[5] Agreements that require us to *assume* that an issue has been excluded from arbitration cannot be said to *expressly exclude* that issue.[6]

Moreover, although Lukens characterizes the Union's reading of the Agreements as strained, we note that in *Stewart v. United States Postal Service*, 926 F.2d 1146 (Fed. Cir.1991), the Federal Circuit interpreted similar language as bifurcating the threshold question of guilt from the question of punishment. After being removed from his position for absenteeism, Stewart was reinstated pursuant to a last chance agreement in which he agreed

> that the original Notice of Removal was issued for just cause. Mr. Stewart will incur no more than eight (8) unscheduled absences, or a total not in excess of 48 hours of unscheduled absences, during the abeyance period.... It is agreed that violation of this stipulation will result in the immediate re-imposition of this Removal, *without further Right of Appeal in any Form.*

Id. at 1147 (emphasis added by court). The agreement further provided that if Stewart violated any of its provisions,

> he would "have no right of appeal through the grievance/arbitration procedure, the Equal Employment Opportuni-

---

**5.** Lukens cites a number of cases in which the courts found that a dispute had been excluded from arbitration. In all these cases, however, the crucial language explicitly described the issue excluded from arbitration.

For example, the collective bargaining agreement construed in *United Steelworkers of America, AFL–CIO v. Phelps Dodge Corp.*, 764 F.2d 576 (9th Cir.1985), stated:

It is understood that the determination of qualifications for hiring pursuant to this paragraph is not subject to the arbitration procedure of this Agreement.

Id. at 578 (footnote omitted).

And in *Contra Costa Legal Assistance Workers v. Legal Services Foundation*, 878 F.2d 329 (9th Cir.1989) (per curiam), the collective bargaining agreement first stated that "[t]he following disputes shall not be subject to the full grievance

procedure as set forth herein," and then proceeded to describe, in specific terms, the types of disputes that were excluded. Id. at 330.

**6.** Although our decision does not depend on this point, we note that, if we accept Lukens's interpretation of the critical language analyzed in the text, other clauses in the Agreements render the scope of the waiver very broad indeed. For example, in addition to prohibiting violations of Company rules relating to drugs and alcohol, the Smith Agreement also provides that violation of any Company rule punishable by a "time off suspension" constitutes a violation of the Agreement, see note 2, and all three Agreements provide that the provisions relating to drugs and alcohol will remain in effect for the remainder of the employees' tenure at Lukens, which could be decades.

ty complaint system, or the Merit Systems Protection Board."

Id.

The Postal Service reimposed Stewart's removal because it claimed that he had incurred 49.93 hours of unscheduled absences. Stewart appealed to the Merits Systems Protection Board ("the board"), claiming that he did not violate the last chance agreement because the agency's calculation of his absences included two absences related to his emergency eye surgery, which he argued were excused. The board held that Stewart had waived his appeal rights by signing the last chance agreement.

The Federal Circuit disagreed. It reasoned that the waiver effected by the agreement went only to the issue of penalty, and not to the question whether Stewart had breached the agreement, stating:

> If Stewart in fact breached the last chance settlement agreement, we agree with the board that the waiver of appeal rights the agreement contains is enforceable because he freely entered into it. . . . But we do not understand the board's refusal to address the threshold issue of breach. The last chance agreement predicates the reimposition of removal and concomitant waiver of appeal rights on breach of one or more of the other stipulations the agreement contains. Where, as here, an employee raises a non-frivolous factual issue of compliance with a last chance agreement, the board must resolve that issue *before* addressing the scope and applicability of the appeal rights waiver.

Id. at 1148 (emphasis in original) (citations and footnote omitted). The court further stated:

> [T]his record presents a legitimate factual issue of whether there was a breach. We think the board must first decide whether Stewart breached the agreement; only if he has, should it consider the enforceability of his appeal waiver.

Id. at 1149.

Lukens correctly points out that *Stewart* arose under the Civil Service Reform Act, rather than under section 301 of the Labor Management Relations Act. But the court's construction of the last chance agreement was based upon the agreement's language, rather than upon the statute, and, therefore, we find this distinction irrelevant for our purposes. Moreover, contrary to Lukens's assertion, the Federal Circuit's opinion in *McCall v. United States Postal Service*, 839 F.2d 664 (Fed. Cir.1988), does not conflict with *Stewart.* The question before the court in *McCall* was not whether the employee had waived his statutory entitlement to arbitration, but whether he *could* do so. The court held that waiver was permissible.

To our knowledge, *Stewart* is the only case in which a federal court of appeals has been required to decide whether a last chance agreement precluded arbitration of the question whether the employee had violated the agreement. The Union cites a number of section 301 cases in which the arbitrator clearly retained the authority to determine whether the employee had committed a violation, but was barred by the agreement from disturbing the employer's choice of penalty, see *Ohio Edison Co. v. Ohio Edison Joint Council*, 947 F.2d 786 (6th Cir.1991); *Bakers Union Factory, No. 326 v. ITT Continental Baking Co., Inc.,* 749 F.2d 350 (6th Cir.1984); *Sears, Roebuck & Co. v. Automotive, Petroleum, & Allied Industries Union, Local No. 618,* 570 F.Supp. 650 (E.D.Mo.1983), and our own research has discovered additional cases to the same effect, see *Coca–Cola Bottling Co. v. Teamsters Local Union No. 688,* 959 F.2d 1438 (8th Cir.1992); *Tootsie Roll Industries, Inc. v. Local Union No. 1, Bakery, Confectionery, & Tobacco Workers' International Union,* 832 F.2d 81 (7th Cir.1987). Although these cases demonstrate that last chance agreements commonly bifurcate the question of guilt from the question of the appropriate penalty, in none of them was the arbitrator's power to determine guilt challenged. Therefore, even though these cases arise under section 301, we do not find them as useful as *Stewart.*

■ As the Seventh Circuit has noted in regard to settlement agreements that pur-

port to bar arbitration, "in uncertain situations, the presumption should favor arbitrability," *Niro,* 827 F.2d at 175. Accordingly, and consistently with *Stewart,* when a settlement agreement bars arbitration of the penalty for violating it, yet fails to specify who is to determine whether a violation has occurred, we decline to infer that the parties intended to exclude this threshold question from arbitration.

### 2. *Evidence of an intention to exclude from arbitration*

Lukens contends that the Union's interpretation of the Last Chance Agreements makes no sense because "it does not contribute any 'value' for Lukens." To support this contention, Lukens cites affidavits to the effect that it would not have agreed to reinstate the employees unless they agreed to forgo their right to arbitrate the question whether they violated the Last Chance Agreements. The Union counters that the Agreements worked to the Company's advantage. In the absence of a Last Chance Agreement, the arbitrator would first determine whether the employee had violated the Company's drug policy and then decide whether the penalty imposed was appropriate. In such a case, the arbitrator could find that the employee had violated the drug policy, yet also decide that the penalty of discharge was too severe under the circumstances. By vesting the Disciplinary Committee with complete authority to determine the appropriate sanction, the Union argues, the Agreement forecloses the possibility that the arbitrator might order reinstatement of an employee guilty of repeated violations of the Company's drug policy, and thus the Agreement does confer something of value upon Lukens.

Moreover, although the affidavits suggest that Lukens viewed the Last Chance Agreements as precluding each employee from arbitrating the question whether he had committed a violation, it provides us with no indication of whether the parties' minds ever met on the issue. See *E.M. Diagnostic Systems v. Local 169, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 812 F.2d 91, 97 (3d Cir.1987) (evidence that one party viewed collective bargaining agreement a certain way does not prove meeting of the minds). Therefore, the affidavits do not qualify as "strong and forceful" evidence of an intention to exclude the grievances from arbitration. Having presented no other evidence of an intention to exclude the grievances from arbitration, Lukens has failed to meet its burden of overcoming the presumption of arbitrability.

## III. CONCLUSION

Reading the Last Chance Agreements in the light of the presumption of arbitrability, we cannot say that they expressly preclude the Union from arbitrating the question whether the employees have violated the Agreements. Moreover, Lukens has failed to produce "strong and forceful" evidence of an intention to exclude this issue from arbitration. Accordingly, we will reverse the summary judgment in favor of Lukens and remand to the district court with instructions to grant summary judgment in the Union's favor.

McCUNE, Senior District Judge, dissenting.

I respectfully dissent. The lower court held that the Last Chance Agreements were clear and unambiguous and waived arbitration. I agree.

These were settlement agreements negotiated by the Union acting on behalf of the three employees who faced discharge for violation of Lukens' drug control rules. They could have been discharged and the discharges could have been arbitrated in due course but they elected to enter into the Last Chance Agreements by which they were allowed to continue to work. The plain meaning of the Agreements was that the men would submit to drug testing and if they had drugs in their systems again, they could plead their cases to the Disciplinary Committee but the Disciplinary Committee had final jurisdiction to dispose of their pleas and there would be no arbitra-

tion. The decision of the Committee would be final.

No other reading of the simple language makes any sense. If these agreements did not mean that the men had a last chance to keep their jobs, why were the agreements captioned "Last Chance Agreements"?

If the Disciplinary Committee could not decide the merits of their pleas, what was its purpose? If it could not decide that the men had violated the agreements, it had no purpose because it had nothing to decide.

The men had ample reason to settle. They faced discharge and arbitration and in view of their records, they were not at all sure that an arbitrator would reinstate them. They wanted to save their jobs. Lukens also had reason to settle. The arbitrator might reinstate the men. The resulting settlement agreements were not ambiguous. The Disciplinary Committee had the final right of disposition. It would have made no sense for Lukens to arbitrate a new violation. It could have arbitrated the violations pending when the Last Chance Agreements were negotiated. Certainly when people settle a dispute they intend to end it and the men and their Union knew the meaning of the Agreements when they provided that the disposition of the Disciplinary Committee would be final.

While the federal law favors arbitration it is not, as the majority noted, arbitration per se that the law favors but the means of dispute resolution selected by the parties. *United Mine Workers v. Barnes and Tucker Co.*, 561 F.2d 1093 (3d Cir.1977). *Barnes and Tucker Co.* illustrated the type of agreement too uncertain and too complicated to constitute a waiver of arbitration but there is nothing uncertain or complicated about the Last Chance Agreements considered here.

The case of *Stewart v. United States Postal Service*, 926 F.2d 1146 (Fed.Cir. 1991) cited by the majority can be distinguished. The last chance agreement in that case provided for no disciplinary committee to which Stewart could direct his plea. The Postal Service had agreed to hold a dismissal in abeyance for one year and Stewart had agreed to incur no more than eight (8) unscheduled absences during the abeyance period. The agreement provided that "it is agreed that violation of this stipulation will result in the immediate reimposition of the removal without further Right of Appeal in any Form." When Stewart underwent an eye examination not intended to require time away from work, it was found that he required a lengthy examination and the immediate attention of a retinal specialist. He missed work. When he reported for the examination by the specialist the next day, he missed work again. In spite of notification by the physician of the extreme emergency involved, the Postal Service removed Stewart forthwith. The Merit System Protection Board dismissed his appeal because of the waiver of his right to appeal. The court was faced with an obvious injustice and there was no agency to which the dispute could be referred. But here the Last Chance Agreements gave the opportunity to the men to plead their cases to the Disciplinary Committee. In each case the pleas were made and in each case hearings were held. It can hardly be argued, in my view, that the *Stewart* case is authority for the proposition that the Union did not waive arbitration when here the disposition of the Disciplinary Committee was to be final.

Accordingly, I do not agree that an arbitrator should decide whether the Last Chance Agreements were violated and that only the penalty for the violations has been agreed upon. If the arbitrator is to decide whether the violations have occurred, he apparently will be called upon to decide only whether marijuana can be found in the system because of a diet of seeds and herbs and whether it may be present because of attendance at a party where marijuana was smoked and, in the case of Mr. Tinsley, whether Tinsley was too ill to give a urine sample, because the method of testing and the results of the testing have apparently not been disputed.

I would hold that arbitration has been waived.