**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**VERIZON COMMUNICATIONS, INC. and Verizon Pennsylvania, Inc., Defendants.**

**No. CIV.A. 03–6056.**

United States District Court, E.D. Pennsylvania.

Jan. 13, 2004.

---

Richard H. Markowitz, Markowitz and Richman, Philadelphia, PA, for Plaintiff.

John E. Iole, Jones Day Reavis & Pogue, Pittsburgh, PA, Sara A. Begley, Reed Smith LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is the motion to dismiss of Defendants Verizon Communications, Inc. and Verizon Pennsylvania, Inc. ("Verizon"). For the reasons that follow, the motion is granted.

### Factual Background

The parties were previously before this Court pursuant to a Motion for Preliminary Injunction and a Complaint filed by Plaintiff, Communications Workers of America, AFL–CIO ("Union"), on December 5, 2002. *Communications Workers of*

*America, AFL–CIO v. Verizon Communications, Inc., et al,* Civ. 02–8893 (J. Curtis Joyner). In that action, Plaintiff sought to enjoin Verizon from enacting a threatened lay off of hundreds of bargaining unit members in violation of provisions contained in the parties' collective bargaining agreement ("CBA") and provisions set forth in a merger agreement executed by the parties. After an injunction hearing, this Court denied the Union's petition for injunctive relief and encouraged the parties to proceed to arbitration.

Meanwhile, another case presenting nearly identical issues was being heard by Arbitrator Shyam Das in New York. On July 10, 2003, Arbitrator Das issued an Opinion and Award in the New York case announcing that Verizon had violated the parties' CBA ("New York decision"). (Plf.'s Complaint Ex. A). Under the New York decision, employees who were involuntarily transferred were to be returned to their former work locations and employees laid off were "to be returned to the payroll and made otherwise whole." *Id.* at pages 57–58. On July 14, 2003, Executive Director of Labor Relations for the Mid–Atlantic Region and Verizon Chairperson Ronald H. Williams announced that the New York decision would apply to the outstanding arbitration cases in New Jersey and Pennsylvania. (Plf.'s Complaint Ex. B). By letter dated July 16, 2003, "All New England and Mid–Atlantic Laid Off Associates" were notified that Verizon was offering reinstatement. (Plf.'s Complaint Ex. C). The letter further stated that the laid off associates would be "made whole" in accordance with the terms of the CBA under which the associates were covered.

Following this offer, Verizon petitioned this Court to dismiss the pending matter as moot. On August 27, 2003, the Union filed a Notice of Dismissal of the Pennsylvania case.

The Union brings the present action pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, to compel Verizon's performance of its obligations set forth in the New York decision, the parties' CBA, and the "additional agreements" between the parties. Specifically, the Union alleges that Verizon has failed and refused to remit back pay to laid off employees, to make laid off employees whole for their health care expenses/losses/damages, and to reverse transfers of laid off employees.

## Discussion

The question before the Court is whether the current dispute is subject to the arbitration provisions of the parties' CBA.[1] For the reasons that follow, we find that this dispute is subject to the arbitration provisions and accordingly, dismiss the case.

 In general, federal labor policy requires a party to a collective bargaining agreement ("CBA") to first attempt use of the contract grievance procedures agreed upon by the parties before proceeding to litigation. *See Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652–53, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). The question of whether a dispute is subject to a CBA's arbitration provisions is to be decided by the court, unless the parties "clearly and unmistakably provide otherwise." *United Steelworkers v. Lukens Steel Co.,* 969 F.2d 1468, 1473–74 (3d Cir.1992) (quoting *AT &*

---

1. Verizon argues that the Union cannot enforce the Das Award because the Union was not a party to that arbitration. The Union's memorandum in response to Verizon's motion to dismiss clarifies that the Union seeks Defendants' compliance with the Das Award only to the extent that its terms were made applicable to the parties pursuant to the parties own "settlement agreement."

*T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Where a CBA contains an arbitration clause, a presumption of arbitrability applies whereby a court should deny an order to arbitrate only where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Lukens,* 969 F.2d at 1474 (quoting *AT & T,* 475 U.S. at 650, 106 S.Ct. 1415)(internal quotations omitted). Doubts are to be resolved in favor of coverage. *Id.* In the context of settlement agreements, this Circuit has held that "[s]ettlement agreements ... between parties to a collective bargaining agreement containing a broad arbitration clause are arbitrable when the underlying disputes are arbitrable, except when the parties expressly exclude the settlement agreements from arbitration" or "[t]he party contesting the presumption of arbitrability [produces] 'strong and forceful' evidence of an intention to exclude the matter from arbitration." *Id.* at 1475 (citing *Niro v. Fearn Int'l, Inc.,* 827 F.2d 173, 175 (7th Cir.1987)).

■ In the present case, the Union argues that the "agreement to apply the New York decision to the affected Pennsylvania employees in exchange for suspension of the Gorman arbitration and dismissal of the federal action was an agreement made by and between [the Union] and Verizon that was entirely independent of any prior written agreements of the parties," including the CBA. Plf.'s Memo. of Law at 10.

Under the principles set forth in *Lukens,* this argument is unpersuasive. By the Union's own admission, the "settlement agreement" ended the pending arbitration and the federal action. The underlying dispute was clearly based on the parties' CBA and was arbitrable. *See Communications Workers of America, AFL–CIO v. Verizon Communications, Inc., et al,* Civ. 02–8893 (E.D.Pa. April 1, 2003) (Document No. 22) (J. Curtis Joyner). Furthermore, Verizon's letter offering to reinstate and "make whole" laid off employees specifically refers to the CBA. The letter states that the "make whole" remedy is to be calculated in accordance with the employees' CBA. The CBA clearly governs the back pay and health benefits to which an employee is entitled following a grievance settlement—the pay and benefits which the Union now alleges Verizon has failed to remit. *See* Def.'s Ex. D. We therefore fail to see how the "settlement agreement" can be "entirely independent" of the parties' CBA.

The Union also argues that because it has not identified a specific provision of the CBA that has been violated, the arbitration provisions cannot apply. This argument stems from language in the grievance and arbitration provisions that requires "written notice specifying the Section of the Agreement alleged to be violated." This language, however, should be examined in the context of the entire provision, which reads:

[If at any time, a controversy should arise between the Union and the Company regarding the true intent][2] and meaning of any provision of this Agreement or regarding any claim that either party has not performed a commitment of this Agreement, the controversy may be presented for review in accordance with the preceding Sections of this Article. If the controversy is processed un-

**2.** The language contained in the brackets is taken from Verizon's Memorandum of Law at page 5 because the attached exhibit containing the grievance provisions of the CBA is missing a page.

der these Sections and is not satisfactorily settled, the Union or the Company, by written notice specifying the Section of the Agreement alleged to be violated, may submit the question under dispute to arbitration in accordance with the provisions of Article 13 of this Agreement ... Grievances and controversies shall be settled only in accordance with the procedures set forth herein.

Def.'s Motion to Dismiss. Ex. E.

This Court cannot fathom how the Union can show that employees have not received the benefits to which they are entitled by virtue of the "settlement agreement" without reference to the provision of the CBA that dictates what it means to be "made whole."

Applying the above principles, we find that because the original dispute underlying the "settlement agreement" was arbitrable and because the arbitration clause is sufficiently broad, the current dispute regarding the parties' "settlement agreement" is subject to the arbitration provisions of the parties' CBA. Plaintiff's complaint is therefore dismissed.

### Conclusion

An appropriate order follows.

### ORDER

AND NOW, this 13th day of January, 2004, upon consideration of Defendants' Motion to Dismiss (Document No. 6), and Plaintiff's response thereto (Document No. 11), for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that Defendants' Motion is GRANTED.