UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Plaintiff,

v.

PACKAGING CORPORATION
OF AMERICA, Defendant.

No. 5:92–CV–78.

United States District Court,
W.D. Michigan, S.D.

Oct. 22, 1992.

Duane F. Ice, Michael J. Bommarito, Miller, Cohen, Martens, Ice, et al Southfield, MI, Kim Arthur Siegfried, United Steelworkers of America, Allen Park, MI, for plaintiff.

Carl E. Ver Beek, Jeffrey Fraser, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for defendant.

## OPINION

QUIST, District Judge.

Plaintiff, United Steelworkers of America (Union), has sued an employer, Packaging Corporation of America (PCA), with which it has a collective bargaining agreement (Labor Agreement). The Union asks this Court to order PCA to arbitrate the circumstances surrounding, and the justification for, PCA's attempt to discharge a former PCA employee and union member named David N. Hoffrichter. PCA argues that Mr. Hoffrichter's discharge is not arbitrable because Mr. Hoffrichter was a probationary employee at the time of his discharge and the Labor Agreement clearly states that the discharge of a probationary employee is not arbitrable. The parties have filed cross-motions for summary judgment. This Court has jurisdiction pursuant to Section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185.

### FACTS

On October 9, 1991, David N. Hoffrichter began work with PCA as a Labor Pool employee. The Labor Agreement covers Labor Pool employees. For purposes of these motions the important parts of the Labor Agreement are:

*Article V, Section 1*

For the purpose of this Agreement, grievances shall consist of complaints or charges filed by any employees concerning the terms of this Agreement and compliance therewith.

*Article II, Section 7*

All new employees shall serve a 60–calendar day probationary period beginning with the first day of employment with the exception of employees hired for the specific purpose of summer vacation replacement who shall serve a 120–calendar day probationary period. The Company will provide the Chief Steward with a list of those who are hired for summer vacation replacements. *During this period the Company shall have the unrestricted right to discharge them and such a discharge shall not constitute a grievance.* Neither shall they have any seniority during this probationary period.

If at the end of the probationary period they remain in the employment of the Company, their seniority shall date from this day of actual employment. (Emphasis added.)

The grievance resolution procedure of the Labor Agreement proceeds through several steps and culminates in binding arbitration before an arbitrator. In this case, PCA refuses to go to arbitration.

The parties agree that December 7, 1991 was the last day of Mr. Hoffrichter's probationary period. They also agree that if Mr. Hoffrichter was notified of his discharge on or before December 7, the discharge is not subject to the grievance—arbitration procedure. The parties also agree that if the notice of discharge was given after December 7, the discharge is subject to the grievance—arbitration procedure. The parties disagree about two important items before the Court:

  1. Whether PCA did, in fact, discharge Mr. Hoffrichter on December 7; and

  2. Whether a court or an arbitrator should determine when the discharge occurred.

The Union argues that the Court should first address whether a court or an arbitrator should determine when the discharge occurred. The Union claims that arbitrators are given a special role in resolving disputes between labor and management. Therefore, an arbitrator should decide the factual issue of when the notice was given. PCA, on the other hand, claims that the arbitrator has no authority over the discharge if the notice of discharge was, in fact, given on December 7. PCA claims that the Court should determine whether the condition precedent to arbitration has occurred.

## DISCUSSION

Summary judgment is appropriate if there is "no genuine issue as to any material fact...." Fed.R.Civ.P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if a reasonable jury could return judgment for the nonmoving party. *Id.* Once the moving party has met the initial burden showing the absence of a genuine issue of material fact, the nonmoving party must present evidence to show that a material fact is disputed in order to defeat the motion. The nonmoving party may not rely on the Court to disbelieve the movant's facts. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). After the movant has properly supported its claim for summary judgment and the nonmovant has responded, summary judgment is not proper if the evidence presents a "sufficient disagreement to require submission to a jury...." *Id.* (quoting *Liberty Lobby,* 477 U.S. at 251–52, 106 S.Ct. at 2512). All inferences must be drawn in a light most favorable to the nonmoving party. *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992).

The Union believes that it is entitled to summary judgment because it claims that as a matter of law an arbitrator must decide the date on which Mr. Hoffrichter was discharged. On the other hand, PCA believes that it is entitled to summary judgment because it claims that as a matter of law the Court must decide the date on which Mr. Hoffrichter was discharged. Moreover, PCA claims that no genuine dispute exists as to that date.

### Union's Motion For Summary Judgment

Any analysis of whether a particular dispute is subject to arbitration must start with the famous *Steelworkers Trilogy: Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). In *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court summarized the principles established by the *Trilogy* and subsequent cases. In *AT & T*, a general arbitration clause covered "differences

arising with respect to the interpretation of this contract or the performance of any obligation hereunder ..." The same article stated that it did not cover disputes "excluded from arbitration by other provisions of this contract." A subsequent article of the contract, Article 9, stated that AT & T could exercise certain management functions which are "not subject to the provisions of the arbitration clause" including the hiring and replacement of employees and the termination of employment. A third provision, Article 20, prescribed the order in which employees could be laid off. The union challenged a layoff claiming it violated Article 20. AT & T refused to submit the dispute to arbitration on the grounds that the dispute was not arbitrable under Article 9. The union then sought a court order to force arbitration. The district court pointed out that the parties interpreted Article 20 differently and ordered arbitration. The Seventh Circuit affirmed. The Supreme Court reversed. The Court cited the principles to be gleaned from the *Trilogy* and other cases:

The first principle gleaned from the *Trilogy* is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration.

The second rule, which follows inexorably from the first, is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

\*    \*    \*    \*    \*    \*

The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is

not to rule on the potential merits of the underlying claims.

\*    \*    \*    \*    \*    \*

Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

\*    \*    \*    \*    \*    \*

The willingness of parties to enter into agreements that provide for arbitration of specified disputes would be "drastically reduced," however, if a labor arbitrator had the "power to determine his own jurisdiction...." Were this the applicable rule, an arbitrator would not be constrained to resolve only those disputes that the parties have agreed in advance to settle by arbitration, but, instead, would be empowered "to impose obligations outside the contract limited only by his understanding and conscience." This result undercuts the longstanding federal policy of promoting industrial harmony through the use of collective-bargaining agreements, and is antithetical to the function of a collective-bargaining agreement as setting out the rights and duties of the parties.

475 U.S. at 648–651, 106 S.Ct. at 1418–1420 (citations omitted). The Court determined that the District Court should first determine arbitrability. In reversing the Seventh Circuit, the Court stated:

The issue in the case is whether, because of express exclusion or other forceful evidence, the dispute over the interpretation of Article 20 of the contract, the layoff provision, is not subject to the arbitration clause. That issue should have been decided by the District Court and reviewed by the Court of Appeals; it should not have been referred to the arbitrator.

475 U.S. at 652, 106 S.Ct. at 1420. The Concurring Opinion indicated that the case

was remanded to determine whether bargaining history provided "forceful evidence" of an intent to exclude disputes over Article 20. 475 U.S. at 655–656, 106 S.Ct. at 1422.

A determination of whether a particular question goes to the arbitrability of the question or whether the question goes to the merits of the position the union seeks to arbitrate should be made simply by looking at the grievance and arbitration provision in the Labor Agreement. *Mail–Well Envelope v. Machinists*, 916 F.2d 344 (6th Cir.1990). Following the guidance of *Mail–Well* in the instant case, the Court sees a broad arbitration clause, Article V, Section 1, but the Court also sees a very clear exclusion, Article II, Section 7. Article II, Section 7 is the type of exclusion referred to in *AT & T* as an "express exclusion" from arbitration. The exclusion is simple and clear. No grievance exists if a PCA employee is terminated within the first 60 days of employment. The only issue is the applicability of this exclusion to the facts in this case.

On the issue of who should determine whether a clear exclusion to arbitrability is applicable in a particular factual setting, the *Trilogy* does not give much guidance because each case in the *Trilogy* involved an interpretation of a different portion of the collective bargaining agreement. In *American Manufacturing*, the parties disputed the interpretation of the seniority provision of the contract. In *Warrior and Gulf*, the parties disputed which matters were "strictly a function of management." In *Enterprise Wheel*, the parties disputed a company's duty to follow an arbitration decision after the expiration of the contract under which the arbitration occurred. Likewise, the lower court cases cited by the Union involve the interpretation of clauses or phrases of a collective bargaining agreement.[1]

*AT & T* is not very helpful either. The issue in *AT & T* was whether Article 9 of the Labor Agreement provided an exclusion from arbitrability for layoffs under Article 20. Here, both parties agree that Article II, Section 7 provides an exclusion from arbitrability.

This Court finds that the cases involving the timing in grievance procedural matters to be the most helpful in resolving the issue facing it. These cases are somewhat analogous because they—like the instant case—go to the question of whether a condition precedent to the arbitration procedure has occurred. Thus, *Local Union 89 v. Moog Louisville Warehouse, Inc.*, 852 F.2d 871 (6th Cir.1988) lends weight to the argument that this Court should decide when notice of discharge was given. In *Moog*, the parties disputed whether arbitration was proper because the collective bargaining agreement stated that the union must notify the company within 15 days of the company's answer to a step in the grievance procedure in order to preserve the right to arbitrate. The parties disputed whether such notice was timely given. The Sixth Circuit stated that the "court must first determine from the contract provisions dealing with arbitration, the particular grievances that are intended to be subject to arbitration." *Id.* at 875. The Sixth Circuit stated that the dispute was not sub-

---

1. In *International Union, Allied Industrial Workers v. Michigan Plastic Products Co.*, 1990 U.S. Lexis 14179 (W.D.Mich.1990) the parties disputed whether persons working at the company but on the payroll of a temporary agency were "employees" under the labor agreement.
In *Steelworkers v. Northern Hardwoods Division, The Mead Corp.*, No. 2:91–CV–104 (W.D.Mich. March 19, 1992), the parties disputed whether the employee's non-bargaining unit position at the same company constituted "other employment" which would terminate his seniority rights.
In *Woosley v. Avco Corp.*, 944 F.2d 313 (6th Cir.1991), the court, not an arbitrator, determined that the seniority provision of the labor agreement gave the employee the right to return to his bargaining unit position.
In *Distillery, Wine & Allied Workers v. National Distillers & Chemical Corp.*, 894 F.2d 850 (6th Cir.1990), the court, not an arbitrator, decided that a labor agreement between the union and one division of the company also pertained to another division of the company.
In *Communication Workers of America v. Michigan Bell Telephone Co.*, 820 F.2d 189 (6th Cir. 1987), the court determined that bargaining unit employees on leave maintained some rights under the labor agreement; however, the court stated that an arbitrator must decide what the rights are.

ject to arbitration *unless the court finds* that the union timely notified the company. *Id.*

Both *Moog* and the instant case require a factual determination as to when an event occurred to decide whether the dispute is subject to arbitration. Neither case requires the interpretation of words within the agreement. In *Moog,* the parties clearly understood the meaning of 15 days. The only question was whether the 15 day deadline had been met. In the instant case, both sides clearly understand the definition of a probationary employee and when the 60 calendar day probationary period expired. The only question is whether the company met the sixty day deadline.

During the oral argument, this Court brought *Steelworkers v. Lukens Steel Co.,* 969 F.2d 1468 (3rd Cir.1992) to the attention of the parties. In a letter, the Union asserts that *Lukens Steel, Ohio Edison Co. v. Ohio Edison Joint Council,* 947 F.2d 786 (6th Cir.1991) and *Bakers Union Factory v. ITT Continental Baking Co.,* 749 F.2d 350 (6th Cir.1984) all support its position because they all required *"arbitration* in situations where the *sole* authority of the arbitrator is to determine whether a violation occurred (or in this case, whether PCA actually gave notice on the 60th day, as it claims)." (Letter from K. Siegfried to Judge Quist of 10/14/92.) This Court believes that the rationale of *Lukens Steel* is more helpful than its actual holding. The Third Circuit stated that *there was an issue of interpretation* as to whether the "last chance agreement" required an arbitrator or a disciplinary committee to determine whether the employee violated the last chance agreement. The *Lukens Steel* agreement was, obviously, subject to two different interpretations, so the Third Circuit held that the presumption of arbitrability was not overcome by either an "express exclusion" or other "strong evidence." Tellingly, however, the Third Circuit would not have ordered arbitration *if* the language in the "last chance agreement" had been clear. For example, the Third Circuit would not have ordered arbitration of the

penalty if a violation of the last chance agreement had been found. *Lukens,* 969 F.2d at 1476. Thus, *Lukens Steel* stands for the proposition, among others, that if an exclusion from arbitration is clear, there can be no arbitration of the excluded issue. Here, a clear exclusion exists.

This Court also believes it to be important that determining when Mr. Hoffrichter was discharged does not require any "greater institutional competence of arbitrators in interpreting collective-bargaining agreements" (*AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419) and will not establish any precedent for the parties to this particular Labor Agreement. It is fact and incident specific. Either Mr. Hoffrichter was discharged on December 7, or he was not.

The Court concludes that a determination as to the date on which Mr. Hoffrichter was discharged is a determination as to whether the discharge is a "grievance" subject to arbitration. A determination as to whether a dispute is subject to arbitration is the very determination that *AT & T Technologies* and numerous other cases state that the court—not the arbitrator— must make. Therefore, this Court holds that the Court, and not an arbitrator, should decide when the discharge occurred.[2]

*PCA's Motion For Summary Judgment*

█ PCA motioned the Court to grant summary judgment and hold, under the standards of Fed.R.Civ.P. 56, that PCA did notify Mr. Hoffrichter of his discharge on December 7, 1991. PCA claims that unrefuted affidavits demonstrate that the discharge letter was mailed on December 7.

The Court does not believe that the standards for summary judgment have been met because genuine issues of material fact exist. The Court has examined the postmark of the letter of notification. The postmark seems to read "December 9, 1991." If the letter was mailed on December 9 and not on December 7, Mr. Hoffrichter was not a probationary employee

---

**2.** The question before this Court does not go to the underlying merits of the dispute relating to the collective bargaining agreement. If the dis-

charge is arbitrable, the arbitrator will make the decision on the underlying dispute as to whether there was proper cause for the discharge.

when the notice was delivered, and his discharge is subject to arbitration. The postmark raises genuine doubt as to the date the letter was sent. The Court should not have to join PCA's speculation as to this question. The Court has also read the affidavits submitted by the Union. These affidavits raise reasonable doubts as to the credibility of PCA's affidavits. The timing of PCA's notice to Mr. Hoffrichter is best dealt with in a face to face trial with the right to cross examine witnesses.

CONCLUSION

For the reasons stated, the Union's Motion for Summary Judgment is DENIED. PCA's Motion for Summary Judgment is also DENIED. This matter will be set for final pretrial and non-jury trial at the earliest convenient date. The sole issue to be tried will be the date that Mr. Hoffrichter was discharged. An order consistent with this Opinion will be entered.