**Drellie GIBSON, III, Petitioner,**

v.

**DEPARTMENT OF VETERANS AFFAIRS, Respondent.**

**No. 98–3073.**

United States Court of Appeals, Federal Circuit.

Nov. 24, 1998.

---

George Melville Johnson, Law Offices of George Melville Johnson and Associates, P.C., of Atlanta, GA, argued for the petitioner.

R. Alan Miller, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for the respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel on the brief was Patricia Elrod–Hill, Staff Attorney, Office of Regional Counsel, Department of Veterans Affairs, of Atlanta, GA.

Before MICHEL, PLAGER and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Concurring opinion filed by Circuit Judge PLAGER.

MICHEL, Circuit Judge.

Drellie Gibson, III, petitions for review of a final decision by the Merit Systems Protection Board (the "Board"), No. AT–0752–96–0463–I–1, dismissing his appeal of his removal from his position as a supply clerk at a United States Department of Veterans Affairs ("DVA") Medical Center. The initial decision of the Administrative Judge ("AJ") became the final decision of the Board when the Board denied Gibson's petition for review on October 29, 1997 for failure to meet the regulatory criteria for such review. In his decision, the AJ dismissed Gibson's appeal for lack of jurisdiction because the appeal was precluded by the terms of the "last-chance" settlement agreement previously entered into by Gibson and the DVA. The appeal was argued on October 8, 1998. Gibson argues that the Board erroneously found that he breached the last-chance agreement by violating an agency policy regarding visiting patients, as the policy, he maintains, does not apply to employees. Because Gibson fails to persuade us that the Board committed legal error and we hold that its findings are supported by substantial evidence, we affirm.

## BACKGROUND

Gibson was a Medical Supply Technician in the DVA Medical Center in Atlanta, Georgia.

In 1995, Gibson's superiors proposed his removal for illegally using drugs and stealing government property. Settlement discussions between Gibson and his superiors resulted in the signing of a last-chance settlement agreement in August, 1995. Under the express terms of the agreement, Gibson's removal would be held in abeyance for twelve months provided Gibson did not violate any of the policies or regulations of the Medical Center, and would thereafter be rescinded. However, a violation would reactivate his removal. In addition, Gibson waived his right to appeal any such removal to the Board.[1]

The DVA removed Gibson from his position after it found that Gibson breached the last-chance agreement on two occasions in February, 1996, when he entered the Medical Intensive Care Unit (the "MICU") without permission. Gibson filed an appeal of his reactivated removal with the Board. The Board did not decide the merits of the removal, framing the "sole issue in this case" as "whether the appellant materially breached the last-chance agreement." According to the Board, if Gibson did materially breach the agreement the Board had no jurisdiction to hear his appeal because he had expressly waived that right in the agreement. At issue was solely whether Gibson violated a DVA policy by not obtaining permission before entering the MICU to visit a patient. On both of the dates in question, February 11 and 13, 1996, Gibson accompanied a friend while she visited her husband, who was a patient in the MICU.

The DVA contended that the hospital had a policy prohibiting anyone, including hospital employees, from visiting patients in the MICU without prior permission. The only written policy, however, is found in a brochure given to visitors and posted on the entrance door to the MICU, directing visitors to call into the MICU from a telephone outside the entrance doors before entering the MICU. Thus, outside visitors to the hospital certainly must obtain permission before entering the MICU. The DVA argued, however, that this policy extended to hospital employees such as Gibson, when those employees are visiting patients in the MICU. On the other hand, if the employees are simply carrying out their duties, such as delivering supplies to the MICU, the DVA acknowledged that such permission need not be obtained before entering the unit.

Gibson did not dispute that a violation of the last-chance agreement would result in a waiver of his right to appeal his original 1995 removal for illegal use of drugs and theft of government property. Nor did he argue that he obtained express permission to enter the MICU on the days in question or that he was carrying out his work duties. Gibson instead contended that he did not violate any "policy" as that term is used in the agreement, because there is no established policy requiring hospital employees to obtain permission before visiting patients in the MICU during visiting hours. A clerk from the MICU testified on Gibson's behalf, but did acknowledge that an employee may be told to wait before visiting a patient in the MICU. Gibson also asserted that no other employee has ever been disciplined under the alleged policy, implying that no such policy exists or that he was a victim of selective enforcement.

The AJ concluded that, under these circumstances, Gibson was required by policy to obtain permission prior to entering the MICU, even though he was a Medical Supply Technician at the hospital. The Board relied heavily on the testimony of David Bower, M.D., the Director of the MICU. Dr. Bower admitted that a Medical Supply Technician "does not have to obtain permission prior to entering the MICU in order to deliver supplies." However, Dr. Bower testified that a hospital employee who is merely visiting a patient must follow all established hospital visitation policies, including the requirement that permission be obtained before entering the MICU. A nurse from the MICU also so testified.

After the AJ determined that such a policy applicable to employees in fact existed, he

1. Paragraph 1(d) of the Settlement Agreement provides:

    Any infraction of VA policies and regulations (including those related to absenteeism, tardiness, AWOL, performance, conduct, etc.) will be considered as a violation of this agreement and will result in immediate termination with no appeal rights.

analyzed the two incidents in question and found that Gibson had not sought or obtained permission to enter the MICU in either instance. On both days, Gibson was accompanying a friend while she went to visit her husband.[2]

With respect to the February 11, 1996 incident, the AJ reasoned:

> By his own admission, the appellant was on a break when he entered the MICU without permission on February 11, 1996. And, the stated purpose for his entry into the MICU on this date was to meet [his friend's husband]. Thus, there can be no doubt that the appellant was a visitor and subject to the agency's policy regarding visitors, when he entered the MICU on February 11, 1996. Because he entered without permission, he violated that policy. And, as previously noted, the last-chance agreement provided for termination without appeal rights for any infraction of agency policy. Accordingly, I find that the appellant violated agency policy on February 11, 1996, when he entered the MICU without permission.

The same finding was reached with respect to the February 13, 1996 incident, because Gibson again admitted that he had not received permission prior to entering the MICU. The Board found both breaches of the agreement material, and dismissed the appeal of the reactivated 1995 removal for lack of jurisdiction because of the express waiver of appeal rights in the agreement.

## DISCUSSION

■ We must affirm the decision of the Board unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation; or un-

supported by substantial evidence. *See* 5 U.S.C. § 7703(c) (1994). It is settled that an employee can waive the right to appeal in a last-chance agreement. *See Stewart v. United States Postal Serv.*, 926 F.2d 1146, 1148 (Fed.Cir.1991); *McCall v. United States Postal Serv.*, 839 F.2d 664, 666–69 (Fed.Cir. 1988). Gibson does not contend the agreement was obtained by fraud, duress or confusion.[3] The issue here then is whether the waiver of Gibson's right to appeal was triggered by a breach of the agreement. More specifically, the issue is whether Gibson violated a DVA policy as that term is used in the agreement. That, in turn, involves whether such a policy existed, for his conduct is admitted.

### I.

■ The AJ's decision was based largely on credibility determinations as to the four witnesses providing testimony. The Director of the MICU and a nurse from the MICU asserted that there was a policy against allowing even hospital employees to visit patients without prior permission. Gibson sought to overcome their testimony with his own testimony to the effect that no such policy existed or had ever been applied to employees. An MICU clerk testifying on behalf of Gibson stated that hospital employees generally do not have to obtain prior permission to enter the MICU, but acknowledged that they could be told that they have to wait before visiting someone in the MICU. The AJ gave the testimony of Dr. Bower and the nurse more weight than the testimony of Gibson and the clerk.

■ Credibility determinations such as these are "virtually unreviewable" on appeal to us. *Hambsch v. Department of the Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). Nor

---

2. The AJ found that on both occasions Gibson failed to show that Gibson's friend had obtained permission to enter the MICU. Gibson does not argue that he obtained implied permission to enter the MICU by virtue of his friend obtaining permission to enter the MICU.

3. Gibson does argue that his signature on the settlement agreement was not voluntary because he was denied union representation. The DVA submitted an affidavit stating that Gibson was informed of this right and requested no represen-

tation. This issue was not addressed by the AJ in his decision, because in a preliminary order, he held that Gibson did not make a non-frivolous argument with his "bare allegation that he was 'forced'" to sign the agreement. Accordingly, the AJ declined to provide a hearing on the issue. We see no error in this denial. *See McCall*, 839 F.2d at 668–69 (refusing to order hearing because no non-frivolous issues of fact were raised that required a hearing).

has Gibson identified anything in the record that would show that the testimony relied on by the AJ was "inherently improbable or discredited by undisputed evidence or physical fact." *Hagmeyer v. Department of Treasury*, 757 F.2d 1281, 1284 (Fed.Cir.1985) (quoting *Dittmore–Freimuth Corp. v. United States*, 182 Ct.Cl. 507, 390 F.2d 664, 685 (Ct.Cl.1968)). Thus, the AJ's finding that a policy existed that prohibited hospital employees from visiting patients in the MICU without prior permission is supported by substantial evidence.

## II.

Gibson had the burden of establishing jurisdiction before the Board by a preponderance of the evidence. *See* 5 C.F.R. § 1201.56(a)(2) (1998); *Link v. Department of the Treasury*, 51 F.3d 1577, 1581 (Fed.Cir. 1995). On the merits of the breach of the agreement issue, the AJ found that the "appellant has the burden of proving, by a preponderance of the evidence, that he did not breach the last-chance agreement." *Gibson v. Department of Veterans Affairs*, slip op. at 5 (citing *Walters v. Department of Agriculture*, 63 M.S.P.R. 348, 353 (1994), *aff'd*, 61 F.3d 919 (Fed.Cir.1995) (Table)). This appears to be a correct statement of the burden on a petitioner as articulated by the Board. *See Link*, 51 F.3d at 1582 ("Link could overcome his waiver of appeal rights by proving that he complied with the last-chance agreement, that Customs breached the agreement, or that he did not knowingly and voluntarily enter into the agreement." (dicta)); *Rogers v. United States Postal Serv.*, 59 M.S.P.R. 647, 651 (1993) ("[T]he appellant was required to show that the appeal-rights waiver should not be enforced against him because he did not violate the agreement."), *aff'd*, 59 F.3d 181 (Fed.Cir.1995) (Table); *Walters v. Department of Agriculture*, 63 M.S.P.R. 348, 353 (1994) (same), *aff'd*, 61 F.3d 919 (Fed.Cir. 1995) (Table). In any event, Gibson does not argue that there was an improper allocation of the burden of proof in this case.

A threshold issue here is whether a "policy," as that term is used in the settlement agreement, even existed. If the policy in question was written, either in a regulation or hospital documents that clearly applied the policy to hospital employees visiting patients, the existence of the policy would not be in doubt. The burden would then be on Gibson to prove compliance with that policy. But when the policy is unwritten, as it is here,[4] the existence of such a policy is uncertain. If Gibson bore the burden of proving the non-existence of the policy or its non-applicability to employees as well as compliance with the policy, he would be placed in the difficult position of proving the non-existence of an unwritten policy. We believe that the agency more properly bears the burden of proving the existence of an unwritten policy such as the policy at issue here, insofar as it applies to employees. As the agency that allegedly promulgated the policy, the DVA is in a better position to establish its existence and applicability. Indeed, for the reasons discussed above, the DVA here has shown the existence of such a policy applicable to employees by providing testimony from hospital employees.

By meeting its burden of proving the existence of the unwritten policy, the DVA has shifted the burden to whether Gibson can prove compliance with the policy. Gibson has not met his burden.

## III.

Gibson does not argue that he personally obtained permission to enter the MICU, or that he personally requested permission to enter the MICU on the days in question. Instead, Gibson argues that the agreement did not contemplate "minor, non-recognized infractions" such as entering the MICU without prior permission. Gibson contends that to enforce such a policy would not provide notice to employees such as himself. But the DVA correctly points out that the settlement agreement applies to *any* violations of policy, without any exceptions for "minor non-recognized infractions." Such broad language

---

4. The MICU has a written policy, posted at the entrance, that applies to visitors, but it does not mention hospital employees.

does not require that the policy in question be routinely enforced to be effective. Moreover, on the first day in which Gibson accompanied his friend to the MICU, the two were stopped by a nurse who told Gibson that he had to call before entering the MICU. Thus, Gibson certainly had notice of the policy when he visited the MICU the second time.

■ Gibson also implies that if he did breach the policy, it was not a material breach of the settlement agreement because the agreement was not meant to cover "minor, non-recognized infractions." We, however, see no reason to disturb the AJ's finding that Gibson's breach was material on both occasions he entered the MICU without prior permission. The hospital staff and the patients in the MICU have a strong interest in being prepared for visitors. For example, some patients in an intensive care unit such as the MICU will not be physically strong enough to see visitors, or a patient may be receiving medical treatment when the visitor arrives. In addition, confidential patient information is displayed on monitors throughout the MICU, and an unannounced visitor could view this information if the hospital staff is not forewarned that they need to turn off the monitors.[5] Thus, we agree with the AJ's finding that Gibson's breach of the hospital policy was material.

Accordingly, there is substantial evidence to support the AJ's finding that this policy was violated by Gibson on the days in question. Indeed, Gibson himself acknowledged that he was visiting a patient and did not obtain express permission to enter the MICU on the occasions in question. Therefore, the AJ correctly found that Gibson violated an agency policy and thereby materially breached the last-chance settlement agreement. Gibson thus did not have the right to appeal his reactivated 1995 removal.

## CONCLUSION

Because Gibson's unauthorized entries into the MICU violated DVA policy, resulting in a material breach of the last-chance agreement, he waived his appeal rights to the Board, which correctly held that it lacked jurisdiction to entertain his appeal. Accordingly, the Board's decision to dismiss is

*AFFIRMED.*

PLAGER, Circuit Judge, concurring.

Though I agree with where we have got to in this case, I dislike the way in which we did it. The thoughtful reader of the majority opinion may note a creative 'twist' by the court in its analysis regarding the allocation of the burden of persuasion in 'last chance' agreements. This twist was thought necessary because of the manner in which we describe the Board's "jurisdiction" in these cases, and thus the way in which we allocate the burden of persuasion.

A last chance agreement typically arises when an agency threatens or takes an adverse action (often discharge—statutorily referred to as "removal") against an employee for some misconduct. The employee has the right to appeal an adverse action to the Merit Systems Protection Board ("MSPB" or "Board"); the claimed grounds justifying an appeal may be simply a denial of the misconduct, or they may involve some other defenses such as retaliation for whistle-blowing.

Sometimes before the employee is discharged, sometimes after the discharge and in the course of an appeal to the Board, the parties settle their differences by entering the last chance agreement. If the case is one in which the agreement is entered into prior to an actual discharge, such as the case here, the agency will agree to hold in abeyance the discharge on the grounds alleged, on the condition that the employee straightens up and flies right (often for a limited period of time). The employee agrees to do so, and agrees that, if the employee fails (*i.e.,* again misbehaves), the employee may be immediately terminated with no appeal rights (*i.e.,* waives any right to appeal). If the agree-

---

5. Gibson's second visit to the MICU with his friend provides an apt example. On that occasion, they both were able to read the monitor outside the patient's room, which revealed the patient's confidential medical condition. The pa-

tient did not want his condition made known and the hospital has a duty to keep this information private unless it receives permission from the patient.

ment arises during the appeal process, the agency agrees to reinstate the employee (on the same condition of good behavior), and the employee similarly agrees to accept termination without appeal rights in the event of a lapse of behavior.

There appears to be no standard form or text for these last chance agreements—each agency deals with its problems on an *ad hoc* basis—though the language in which the waiver provision is cast tends to be a simple, broad statement to the effect that the employee waives any right of appeal. There are several ways such waiver provisions could be understood.

One way is that, if the agency determines in its discretion that the employee has engaged in a subsequent act of misconduct (as defined by the agreement), and thus breached the agreement, the employee is out, and there is no review of the agency decision by the MSPB. This result could be rationalized by treating the eventual discharge as exclusively the consequence of a breach of an agreement, in essence a breach of the last chance employment contract, and thus not an adverse action over which the MSPB has jurisdiction, *see* 5 U.S.C. §§ 7701(a), 7513(d), 7512 (1994). (Whether the employee could obtain direct review, in a court of competent jurisdiction, of the discharge on the ground that the alleged breach of the contract did not occur, and thus the discharge is a breach of contract by the Government, is a question which to my knowledge has not been addressed.)

A variant on this analysis is to treat the eventual discharge as an adverse action as well as a breach of the last chance agreement, and treat the employee's waiver as applying to both aspects of the case, that is, as a waiver of MSPB review as to both the initial charges and the subsequent alleged breach of the employment contract. Under this variant the employee would be conclusively barred from challenging the Government's action before the MSPB. In effect, the employee is unable to state a claim for which the MSPB could grant relief. *See Link v. Department of the Treasury,* 51 F.3d 1577, 1584 (Plager, J., concurring).

Neither the Board nor this court has understood last chance agreements in either of these ways. Instead, the waiver is deemed to apply "only to the facts underlying and the legal validity of the original [threatened or carried out] removal." *Stewart v. United States Postal Serv.,* 926 F.2d 1146, 1149 n. * (Fed.Cir.1991). Despite the generally-unqualified language in these last chance agreements that the employee waives appeal rights to the MSPB, the question of whether there has been an actual breach of the last chance agreement by the employee through a subsequent act of misconduct is deemed a question that the employee may take to the MSPB for review; that is, the employee is deemed "not [to have] waive[d] his right to contest the breach of the agreement itself." *Id.* Stated another way, the employee's breach of the agreement is said to be a condition precedent to the waiver: "The last chance agreement predicates the .... waiver of appeal rights on breach of one or more of the other stipulations the agreement contains." *Id.* at 1148; *see also Briscoe v. Department of Veterans Affairs,* 55 F.3d 1571, 1573 (Fed.Cir.1995) (same).

This understanding does not make the employee's "waiver" promise under the last chance agreement meaningless. To the contrary, the employee gives up something significant in exchange for the agency's forbearance from pursuing (or sustaining) the discharge. What the employee gives up is the case that the Government otherwise must prove under the law to justify removal of an employee.

When an employee challenges an adverse action (*e.g.,* discharge) in the ordinary course by initiating MSPB review, the Government, to have the action upheld, must establish, one, that the charged conduct occurred, two, that there is a nexus between that conduct and the efficiency of the service, and, three, that the penalty imposed is reasonable. *See Pope v. United States Postal Serv.,* 114 F.3d 1144, 1147 (Fed.Cir.1997). The Government bears the burden of proving its charges by a preponderance of the evidence. *See Jackson v. Veterans Administration,* 768 F.2d 1325, 1329 (Fed.Cir.1985); *Hale v. Department of Transp.,* 772 F.2d 882, 885 (Fed.Cir.1985).

In contrast, when discharge under a last chance agreement is the case, the sole issue raised on appeal to the MSPB is whether the employee in fact violated the agreement by an act of 'misconduct' as defined under the agreement. Nexus with the efficiency of the service is not at issue, nor is the reasonableness of the penalty (typically the discharge). Furthermore, the universe of actionable misconduct often is defined quite broadly by the agreement; for example, under the agreement in this case "[a]ny infraction of VA policies or regulations ... will result in immediate termination...."

The outstanding question posed by this understanding of the last chance agreement is, which party bears the burden of persuasion on the one matter at issue—*i.e.*, whether the employee in fact breached the agreement. In the ordinary MSPB appeal from an adverse action, the Government, as previously noted, bears the burden of establishing the offense. And under ordinary contract law, a party alleging breach—here the Government—bears the burden of proving the breach. *See Technical Assistance Int'l, Inc. v. United States,* 150 F.3d 1369, 1373 (Fed. Cir.1998).

In my view, this should be the starting point in last chance agreement cases as well. That is, absent an explicit contrary provision in the agreement, the Government bears the burden of justifying its action (typically removal) by proving that the employee in fact violated the terms of the agreement. Thus, the way in which the burden is allocated under these last chance agreements is a matter of contract interpretation. If the parties in the last chance agreement assign the burden of persuasion otherwise—as they certainly could—that controls. If the agreement is silent on the matter, as it is in this case, the default position should be the 'ordinary' allocation of the burden of persuasion— the Government alleges breach, the Government should prove its case.

The case that the Government must prove is only that the employee violated the behavioral requirements of the last chance agreement. The Government need not establish a nexus between the misconduct and the efficiency of the service, or that the penalty is

appropriate to the misconduct. This is because, as recognized in *Stewart,* 926 F.2d at 1149 n. *, the employee is deemed to have waived his right to refute the original alleged misconduct, as well as the questions of whether that misconduct has a nexus with the efficiency of the service and whether the penalty (discharge) is appropriate.

In effect, the discharge that flows from the misconduct that constitutes breach of a last chance agreement stands on both the original alleged misconduct and the subsequent misconduct constituting breach. The resulting termination is not merely a reinstatement of the original proposed or carried out removal. Nor is the termination based entirely on the subsequent misconduct, as the otherwise prerequisite nexus may be lacking, or, more likely, the penalty (termination) may be considered disproportionate. It is the combination of breach of the employment contract— the last chance agreement—coupled with the initial adverse action that justifies the termination; and it is the latter aspect—the adverse action aspect—of the transaction that gives the MSPB undoubted jurisdiction to hear the employee's appeal of whether a breach in fact occurred.

Unfortunately, the analysis used by the Board in these last chance agreement cases, largely left uncorrected by this court, begins with a misunderstanding of the Board's "jurisdiction," and as a result allocates the burden of persuasion in a perverse way. *See, e.g., Briscoe,* 55 F.3d at 1573, *McCall v. United States Postal Serv.,* 839 F.2d 664, 668–69 (Fed.Cir.1988); *but see Link,* 51 F.3d at 1584 (Plager, J., concurring). Under this "jurisdiction" view of the case, the Board accepts an employee's appeal from the agency's decision that there has been a breach of the last chance agreement. The Board reviews the case to decide whether there has been a breach. *See Briscoe,* 55 F.3d at 1573 ("It is the board's responsibility to determine whether ... [a breach of the agreement has occurred].").

If the Board agrees with the employee that there has been no breach (that is, that the agency does not have cause to discharge), the Board concludes that there has been no waiver of appeal rights and that it therefore has

jurisdiction, and it then overturns the agency decision. If, however, the Board on the merits agrees with the agency that a subsequent act of misconduct occurred, breaching the last chance agreement, the Board allows the discharge to stand. But the Board explains this by saying it never had "jurisdiction" to hear the appeal, *i.e.*, it dismisses for "lack of jurisdiction." And our cases generally parrot this reasoning. *But see Stokes v. Federal Aviation Admin.*, 761 F.2d 682, 687 (Fed.Cir. 1985) (Board dismissal of a probationary employee's appeal for " 'lack of jurisdiction' . . . when . . . the Board goes on to determine the entire case . . . is . . . inappropriate. It is at best incongruous to speak as though the jurisdictional issue is all that has been decided when it is the entire case that has been decided.").

There is an explanation (or motivation, on the Government's part) for this Alice–in–Wonderland view of jurisdiction. By saying that the question is one of "jurisdiction," the Board can invoke the familiar rule that an employee who appeals an agency action to the Board has the burden of establishing that the Board has jurisdiction over the case. *See* 5 C.F.R. § 1201.56(a)(2)(i) (1997); *Link*, 51 F.3d at 1581. The employee therefore must establish that the employee's complaint falls within the limited review authority that Congress assigned to the Board. In this way, the Board explains—attempts to justify— why the employee on appeal to the Board in a last chance agreement case has the burden of proving that the breach, alleged by the Government, did not occur. *But see Stokes*, 761 F.2d at 687 ("[B]y treating the entire case as one directed solely to the issue of jurisdiction, the Board allocates to the probationary employee the entire burden of proof on all issues throughout the case. That allocation is contrary to that set forth in our cases.").

In the case before us, the employee was assigned the duty of proving that his misconduct—his violation of the agreement to behave—did not occur. He attempted to do that by arguing that there was no policy, regulation or rule controlling an employee's access to the hospital ward, and thus his entering there was not a breach. Under the "jurisdiction" rule, the employee should have had to prove the non-existence of the policy, regulation, or rule. The majority here properly dismisses that idea, noting that to put on the employee the burden of proving that something does not exist is a bad idea, particularly when the other party is the possessor of the proof. *See Brush v. Office of Personnel Management*, 982 F.2d 1554, 1561 (Fed.Cir.1992). Instead, the court shifts the burden of persuasion on that question to the Government (the Government on these facts being found to have carried the burden). A perfectly sensible, but, under the "jurisdiction" theory, incorrect twist on the burden allocation.

The flaw of course is with the notion that the problem is one of the Board's "jurisdiction." In terms of subject matter jurisdiction as it is properly understood, if the issue before the Board is viewed as one purely of contract rights, the Board has no jurisdiction over the cause at all, regardless of whether the Government or the employee is right, since the Board does not hear contract cases. If the issue is whether an adverse action— *e.g.*, "a removal"—was properly taken against an employee, the Board has unquestioned jurisdiction, and that is true whether on the merits the Government is shown to have been right or wrong in its decision that a breach of the last chance agreement occurred. 5 U.S.C. §§ 7701(a), 7513(d), 7512.

The "jurisdiction" explanation is a red herring. The analysis should be straightforward: when the Government terminates an employee for violation of a last chance agreement, the Government bears the burden of justifying the termination by proving the alleged breach—unless the agreement allocates the burden differently. Thus, this is a matter of construction of the employment contract (the last chance agreement). Though the issue before the Board arises from the agreement, the question is whether the Government has properly taken an adverse action (discharge of the employee on the basis of the alleged breach), and there is no doubt that the Board has jurisdiction to decide that question. This is abundantly clear when we remember the invariable rule that a party to litigation cannot by agree-

ment create jurisdiction in a forum when it would not otherwise exist, nor can it take away jurisdiction that Congress has granted. *See* 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3801, at 7 (2d ed.1986) ("[J]urisdiction over the person ... can be waived, ... unlike jurisdiction of the subject matter, which cannot be waived by the parties."); *Industrial Addition Ass'n v. Commissioner of Internal Revenue*, 323 U.S. 310, 313, 65 S.Ct. 289, 89 L.Ed. 260 (1945) ("Want of jurisdiction ... may not be cured by consent of the parties; but when the court has jurisdiction, it has power to decide the case brought before it....").

In the end, I agree with the result in this case. The agency discharged Mr. Gibson for misconduct which amounted to a breach of the last chance agreement. When Mr. Gibson challenged that determination before the Board, as our cases entitle him to do, the Board agreed with the agency, finding that there was a visitor policy understood to apply to employees as well as visitors and that Mr. Gibson violated the policy. Though the Board stated that Mr. Gibson had the burden of proving non-breach, I do not read the Board's decision as relying on that isolated statement. To the contrary, I read the decision as stating on the whole that the preponderance of evidence established each of these findings.

On appeal here, I cannot conclude that there is an absence of substantial evidence in the record to support the findings by the Board, or that the Board otherwise erred. *See* 5 U.S.C. § 7703(c) (1994). I only regret that the Board, and this court, continues potentially to confuse litigants, many of whom are *pro se*, and sometimes ourselves, by describing these cases in terms of "jurisdiction," rather than in straightforward terms displaying a clear understanding of these last chance agreements.