**John W. TUCKER, Petitioner,**

v.

**DEPARTMENT OF JUSTICE, Respondent.**

No. 03–3139.

United States Court of Appeals, Federal Circuit.

DECIDED: July 11, 2003.

Before LOURIE, RADER, and SCHALL, Circuit Judges.

PER CURIAM.

Petitioner John W. Tucker seeks review of a decision of the Merit Systems Protection Board's (Board) decision to sustain his removal. *Tucker v. Dep't of Justice*, CH–0752–02–0300–I–1, 93 M.S.P.R. 307, 2002 WL 31769479 (MSPB Dec. 4, 2002). Because substantial evidence supports the Board's decision, this court *affirms*.

BACKGROUND

Officer Tucker worked as a correctional supervisor for the Bureau of Prisons (Bureau) at the Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri. In that capacity, he arranged visits between two inmates incarcerated at the MCFP. One of the inmates, Greg DePal-

ma, is a known member of the Gambino crime family in New York. The other, John Gotti, was the former head of the Gambino crime family.[1] As a maximum security inmate, Mr. Gotti was under twenty-four hour video surveillance.

A review of the videotape of May 25, 2001, by Edward Schott, a Special Agent (SA) in the Office of Internal Affairs of the Department of Justice (Agency), showed Mr. Gotti talking to Mr. DePalma, and giving him instructions to "put someone to sleep." The Bureau's policy prohibits inmates in administrative detention from visiting any other inmates. SA Schott determined that Officer Todd Riggins, a probationary correctional officer, had allowed inmate Mr. DePalma to access inmate Mr. Gotti's cell under instructions from Officer Tucker. According to his testimony, Officer Riggins admitted that he knew such visits were not permitted, but allowed them because Officer Tucker was a more experienced correctional supervisor whom he believed had the authority to allow such visits.

SA Schott also interviewed Officer Tucker regarding this incident. Officer Tucker, who initially denied misconduct, eventually signed and initialed an affidavit admitting that he had supervised an unauthorized visit between inmate Mr. DePalma and inmate Mr. Gotti. The Agency then charged Officer Tucker with misconduct for violating post orders by allowing visits between inmate Mr. Gotti and inmate Mr. DePalma, and for displaying conduct unbecoming a supervisor. The Bureau proposed to demote him to the position of non-supervisory correctional of-

ficer. Officer Tucker did not respond to the disciplinary proposal. The Bureau subsequently determined the demotion was appropriate, and demoted him to Correctional Officer, GS–08.

Officer Tucker appealed his demotion to the Board. On May 2, 2002, Officer Tucker testified that he did not take inmate Mr. DePalma into inmate Mr. Gotti's cell, that he did not tell Officer Riggins that such visits were permitted, and that the affidavit he signed during his interview was not true. Officer Tucker also claimed that, although he read and understood the contents of the affidavit before he initialed and signed it, he felt compelled to execute the document. Officer Tucker asserted that he believed his failure to execute the affidavit would result in his termination for failing to cooperate with an investigation. At no point did Officer Tucker contend he was coerced.

After weighing the credibility of the witnesses[2] and reviewing the evidence, the administrative judge issued an initial decision finding that the testimony of Officer Tucker was not credible. The administrative judge dismissed Officer Tucker's attempt to disavow his affidavit as self-serving. Specifically, the administrative judge found no testimonial or documentary support for Officer Tucker's contention that he would be disciplined for failing to sign the affidavit. The administrative judge found that Officer Tucker's affidavit constituted an admission, and concluded that Officer Tucker was guilty of misconduct by permitting a maximum security inmate a visit from another inmate, a clear violation of the correctional facility's orders. The

---

1. Mr. Gotti was convicted of racketeering charges in 1992, and was sentenced to life without parole. Mr. Gotti arrived at Medical Center for Federal Prisoners (MCFP) from the federal penitentiary in Marion, Indiana, due to medical illness. He was held in adminis-

trative detention as a maximum custody inmate at MCFP until his death in 2002.

2. Officer Tucker, SA Schott, Officer Riggins, and others testified at the administrative hearing.

administrative judge also concluded that Officer Tucker gave Officer Riggins, a subordinate, instructions that permitted such visits, and that such behavior was conduct unbecoming an officer. Finally, the administrative judge found that the Bureau's decision to demote Officer Tucker promoted the efficiency of the Bureau.

Officer Tucker filed a timely petition for review with the Board. On December 4, 2002, the full board denied Officer Tucker's petition for review. This court has jurisdiction over the final Board decision under 28 U.S.C § 1295(a)(9).

## DISCUSSION

This court may reverse a decision of the Board only if it is arbitrary, capricious, an abuse of discretion or contrary to law, procedurally defective, or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000); *see also Thomsen v. Dep't of Treasury,* 169 F.3d 1378, 1381 (Fed.Cir.1999). Judicial review of Board decisions is limited to review of the administrative record. *Rockwell v. Dep't of Transp.,* 789 F.2d 908, 913 (Fed.Cir.1986).

### I.

Petitioner denies the charge that he took inmate Mr. DePalma into inmate Mr. Gotti's cell, or that he ever instructed Officer Riggins to let the inmates visit. Petitioner attacks Officer Riggins' credibility, arguing Officer Riggins implicated Officer Tucker in order to shield himself from disciplinary actions that might have resulted from the violation of Bureau regulations.

The record shows no evidence that Officer Riggins was biased against Officer Tucker. Officer Riggins' testimony is also consistent with statements in his October 3, 2001 affidavit, which he made under "the pain and penalty of perjury." The administrative judge also found Officer Riggins' demeanor to be "forthright and sincere" and his testimony "did not betray any signs indicating he fabricated his allegations against appellant (Officer Tucker)." Moreover, Officer Tucker's affidavit corroborates Officer Riggins' account of the incidents.

Petitioner now asserts that his affidavit is not true. He claims the document was procured by SA Schott under duress. Petitioner's explanation for disavowing the affidavit, however, is not persuasive, as it is unsupported by record evidence. The record does not show that Officer Tucker would have been disciplined for failing to sign an untrue affidavit. Rather, SA Schott's testimony and the documentary record shows that Officer Tucker received the opportunity to respond to the questions truthfully.

At the start of the interview between SA Schott and petitioner, SA Schott instructed petitioner to sign a form describing his duty to cooperate. The form stated: "You have a duty to reply to these questions and agency disciplinary action, including dismissal, may be undertaken if you refuse or fail to reply fully and truthfully." The form also warned petitioner that he could be criminally prosecuted for providing false answers. In addition to this form, petitioner signed an oath, which was attached to his affidavit. The oath, which petitioner admits to having read and understood, states: "I declare, under penalty of perjury, that the foregoing statement consisting of 2 pages is true and accurate to the best of my knowledge and belief." Thus, the record shows the petitioner had full notice to provide a truthful statement.

SA Schott also testified that petitioner initially vacillated on his admissions and denials, but, after being sworn and signing the affidavit, Officer Tucker did not disavow the accuracy of the affidavit.

■ The administrative judge found the evidence did not support Officer Tucker's self-serving reasons for disavowing his affidavit and ascribed "substantial and probative weight" to the affidavit. A finding on credibility by a trier of fact is usually binding on an appellate court; credibility determinations such as this will not be disturbed unless inherently improbable, discredited by undisputed evidence, or contrary to physical facts. *Hanratty v. Dep't of Transp.*, 819 F.2d 286, 288 (Fed.Cir. 1987); *see also Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986) (noting that credibility determinations are "virtually unreviewable"); *Grubka v. Department of Treasury*, 858 F.2d 1570, 1574 (Fed.Cir.1988); *Hillen v. Dep't of Army*, 35 M.S.P.R. 453, 458 (1987). From the record, this court detects nothing inherently improbable, discredited by undisputed evidence, or contrary to physical facts. Therefore, the record supports the determinations made by the administrative judge pertaining to the veracity of Officer Tucker's affidavit.

## II.

The Bureau charged Officer Tucker with conduct unbecoming a supervisor because he instructed a subordinate officer (Officer Riggins) to violate policy and allow inmate Mr. DePalma to visit inmate Mr. Gotti. The administrative judge found that "a preponderance of the evidence" showed the visits violated prison policy. Because Officer Riggins was subordinate, Officer Tucker's instructing Officer Riggins to permit the visits constituted conduct unbecoming a supervisor. The evidence shows Officer Tucker participated in activity contrary to prison policy. Therefore, Officer Tucker acted unprofessionally when instructing Riggins to allow and supervise the visits between the inmates. Thus, the record supports the determinations made by the administrative judge pertaining to

the allegations of conduct unbecoming a supervisor.

## III.

■ This court finds the Bureau's decision to demote Officer Tucker was appropriate. In order to sustain an adverse action against an employee, an agency must establish three things. *Pope v. United States Postal Serv.*, 114 F.3d 1144, 1147 (Fed.Cir.1997); *Gibson v. Dep't of Veterans Affairs*, 160 F.3d 722, 728–29 (Fed.Cir. 1998). First, the agency must prove, by a preponderance of the evidence, the charged misconduct occurred. 5 U.S.C § 7701(c)(1)(B) (2000). Second, the agency must establish a nexus between that misconduct and the efficiency of the service. 5 U.S.C. § 7513(a) (2000); *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1537 (Fed.Cir. 1984); *Brown v. Dep't of Navy*, 229 F.3d 1356, 1358 (Fed.Cir.2000). Third, the agency must demonstrate the penalty imposed is reasonable. *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 306–07 (1981). Agencies have wide discretion in selecting an appropriate disciplinary action for correctional staff. *Todd v. Dep't of Justice*, 71 M.S.P.R. 326, 330 (1996); *Boatman v. Dep't of Justice*, 66 M.S.P.R. 58, 64 (1994).

In this case, as discussed above, the Agency proved by a preponderance of the evidence that Officer Tucker did, in fact, engage in misconduct. Correctional officers are law enforcement personnel holding positions vested with great trust and responsibility. Record evidence indicates that the Bureau determined Officer Tucker's violation of post regulations were incompatible with the high standard of conduct required of a law enforcement officer. Thus, the punishment proscribed by the Bureau to remedy Officer Tucker's misconduct promoted work place efficiency.

Finally, the Bureau considered *Douglas* factors, such as the lengthy period of Officer Tucker's service, his above average performance record, as well as the egregious nature of Officer Tucker's misconduct. In view of this, the Bureau determined that maintaining the integrity of the federal prison system outweighed any mitigating factors. Thus, the record supports the administrative judge's conclusion that demotion of Officer Tucker is a reasonable punishment.

## CONCLUSION

Because the Board's decision was not arbitrary or capricious, is not contrary to law, and is supported by substantial evidence, this court affirms.