NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3273

MARY E. WRIGHT,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Mary E. Wright, of Los Angeles, California, pro se.

Anthony W. Moses, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Jeanne E. Davidson, Director, and Deborah A. Bynum, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3273

MARY E. WRIGHT,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Petition for review of the Merit Systems Protection Board
in SF0752080166-I-1.

_____

DECIDED:  March 5, 2009

_____

Before MICHEL, <u>Chief Judge</u>, BRYSON, <u>Circuit Judge</u>, and POSNER, <u>Circuit Judge</u>.[*]

PER CURIAM.

## DECISION

Following the termination of her employment with the Department of Veterans Affairs, Mary E. Wright appealed to the Merit Systems Protection Board.  The Board

_____

[*]   The Honorable Richard A. Posner, Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

concluded that her resignation was not shown to be involuntary, and it therefore dismissed her appeal for lack of jurisdiction. We affirm.

BACKGROUND

Ms. Wright worked for the Department of Veterans Affairs for more than 19 years. On November 12, 2006, she completed the training required to work as a Veterans Service Representative ("VSR"). She was subsequently promoted to the GS-10 level and assigned to the Pre-Determination Team in Los Angeles, California. Ms. Wright's duties as a VSR included processing incoming veteran benefits claims, which involved identifying issues and gathering evidence relating to submitted claims. At the GS-10 level, Ms. Wright was required to process an average of eight claims per day with an accuracy rate of at least 85 percent.

On June 26, 2007, Ms. Wright's supervisor notified her that the number of claims she had processed in three of the last five months had been below that performance level. The supervisor then placed her on a 90-day performance improvement plan. The supervisor stated that as part of the plan the supervisor or a designee would meet with Ms. Wright on a weekly basis to provide feedback and suggestions as to how she could improve her performance.

Three months later, the agency proposed to remove Ms. Wright on the ground that she had failed to successfully complete the performance improvement plan. The agency informed her that the number of claims she had processed during that period continued to fall below the required average of eight per day. Ms. Wright responded by asserting that her supervisor had failed to meet with her weekly during the performance improvement review period and that her supervisors had failed to help her improve. On

November 6, 2007, the agency advised Ms. Wright that she would be removed from her position as of November 20, 2007.

On November 19, 2007, Ms. Wright wrote to the director of the Los Angeles Regional Office stating:

> I am involuntarily resigning in lieu of removal to reserve my career record profile. I'm 47 years old and not eligible for the retirement benefits, therefore I want to preserve my retirement benefits and due to the adverse action used for this removal I feel this is my best choice to preserve my years of serv[ice] and my possible employment with another federal agency or this agency.

Ms. Wright's resignation became effective immediately. On December 12, 2007, Ms. Wright filed an appeal with the Merit Systems Protection Board.

Because resignations are presumed to be voluntary, the Board questioned whether it had jurisdiction over Ms. Wright's appeal. In response, Ms. Wright argued that the Board had jurisdiction because the agency knew that its decision to remove her from employment could not be substantiated. Ms. Wright asserted that her supervisor had failed to meet with her during the performance improvement plan and had failed to give her sufficient work to meet her production goals. In addition, Ms. Wright claimed that she had been subjected to a hostile work environment because her supervisors demanded that she leave work on time. Accordingly, Ms. Wright argued, her resignation was the product of coercion by the agency and was therefore involuntary. The Board found that Ms. Wright had made a non-frivolous allegation sufficient to warrant holding a hearing, and a Board administrative judge held a hearing on her claim.

In a thorough opinion, the administrative judge considered each of Ms. Wright's allegations. First, the administrative judge noted that Ms. Wright could demonstrate that

2008-3273                                              3

her resignation had been coerced either by showing that the agency knew that the reasons for removing her could not be substantiated, see Staats v. U.S. Postal Serv., 99 F.3d 1120, 1124 (Fed. Cir. 1996), or by showing that the agency deliberately made working conditions so intolerable that "a reasonable person in [her] position would have felt compelled to resign," Shoaf v. Dep't of Agric., 260 F.3d 1336, 1341 (Fed. Cir. 2001). With respect to Ms. Wright's assertion that she could demonstrate coercion, the administrative judge considered Ms. Wright's argument that the agency knew it could not remove her both because her supervisor allegedly failed to meet with her weekly during the plan period and because she was given inadequate work to complete her performance improvement plan.

After evaluating Ms. Wright's claim that weekly meetings had not taken place, the administrative judge concluded that the evidence did not support that claim. The administrative judge noted that the record contained evidence of weekly meetings in the form of multiple "Reports of Contact." The administrative judge considered Ms. Wright's assertion that those reports were fabricated at a later date along with the evidence that Ms. Wright had only signed the reports under protest and only as of November 1, 2007, long after the meetings had purportedly taken place. The administrative judge also considered the testimony of Ms. Wright's supervisor, who claimed that the meetings had taken place. The supervisor stated that the reports were generated at a later date because she was not aware that she was required to document the meetings, and that the reports were based on notes taken at the times of the meetings. The administrative judge also weighed the testimony of the assistant supervisor and the director of the Los Angeles Regional Office, who asserted that after each meeting they had discussed the

meetings with Ms. Wright's supervisor. The administrative judge credited Ms. Wright's supervisor's version of events because it was corroborated by additional testimony.

The administrative judge also rejected Ms. Wright's claim that she was given inadequate work to succeed in her performance improvement plan. In considering that claim, the administrative judge addressed Ms. Wright's assertion that she was given too few cases generally as well as her complaint that she was given too few "initial cases," which are assigned a greater value than supplemental cases. The administrative judge noted that Ms. Wright had testified that there was a backlog of cases and that her supervisor had advised her to work on cases of vacationing or retiring employees. In addition, the administrative judge described the testimony of Ms. Wright's supervisor, who claimed to have given her "easier cases so that [Ms. Wright] could develop more of them." The administrative judge credited that testimony because it was supported by references in the Reports of Contact to her supervisor having urged Ms. Wright to develop more initial cases.

With respect to Ms. Wright's claim that the agency deliberately made her working conditions intolerable, the administrative judge considered Ms. Wright's complaint that her supervisor had told her to leave work when her shift ended as well as her assertion that she was being harassed for speaking with a co-worker. The administrative judge found that it was within the supervisor's authority to tell Ms. Wright to leave at the end of her shift as well as to question her about work time spent speaking with co-workers rather than completing her job duties. The administrative judge found that the supervisor's actions were "not so intolerable that a reasonable person would feel compelled to resign." In addition, the administrative judge noted that as of the date of

Ms. Wright's resignation, the supervisor whose actions Ms. Wright complained of was no longer her supervisor. Finally, the administrative judge noted that in her resignation letter Ms. Wright explained that she was resigning "to preserve her retirement benefits and to not prevent her from working with the federal government in the future." The administrative judge found those to be credible reasons for her resignation. The administrative judge therefore determined that Ms. Wright had failed to demonstrate that the agency coerced her resignation and thus that Ms. Wright had failed to overcome the presumption that her resignation was voluntary.

DISCUSSION

On appeal, Ms. Wright challenges the Board's determination that weekly meetings took place between Ms. Wright and her supervisor and that sufficient work was assigned to Ms. Wright to allow her to meet her performance review goals. As to those factual questions, the administrative judge weighed Ms. Wright's testimony against the testimony of her supervisor and two other members of the management team. The administrative judge ultimately decided to "credit [Ms. Wright's supervisor's] version of events, because it was corroborated . . . ." The administrative judge is in a far better position than this court to assess the credibility of witnesses, and for that reason, such credibility determinations are virtually unreviewable. See Gibson v. Dep't of Veterans Affairs, 160 F.3d 722, 725 (Fed. Cir. 1998).

Ms. Wright argues that her supervisor's testimony is improbable, as evidenced in part by the failure of any other witnesses to testify that they saw the purported meetings take place. Ms. Wright also points out that her supervisor's testimony—that she was not aware of the requirement that she maintain records of meetings with Ms. Wright—is

belied by the fact that she had previously maintained records of every other meeting between them. The evidence of the supervisor's documentation of other meetings in the past does not make it inherently improbable that the supervisor was unaware of the need to similarly document every weekly meeting during Ms. Wright's performance improvement plan. In short, Ms. Wright's evidence is not sufficiently compelling to overturn the administrative judge's credibility determination. Accordingly, Ms. Wright has not shown that the agency knew it could not substantiate its removal action or that the agency deliberately made working conditions intolerable so as to force her to resign. We therefore uphold the Board's dismissal of her appeal.