NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**EDMOND TYLER, II,**
*Petitioner,*

v.

**DEPARTMENT OF THE ARMY,**
*Respondent.*

---

2011-3098

---

Petition for review of the Merit Systems Protection Board in case no. DC0752100401-I-1.

---

Decided: January 17, 2012

---

EDMOND TYLER, II, of Washington, DC, pro se.

CHRISTOPHER A. BOWEN, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

---

Before RADER, *Chief Judge*, and O'MALLEY and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Edmond Tyler, II appeals the final decision of the Merit Systems Protection Board ("MSPB") affirming his removal from his position as a police officer based on various charges relating to conduct unbecoming of a police officer. Because we find the MSPB's decision to be supported by substantial evidence and in accordance with the law, we affirm.

## I.  BACKGROUND

Mr. Tyler was employed as a police officer on Fort Detrick, Maryland at the Walter Reed Army Medical Center. On January 25, 2010, Mr. Tyler was informed of his proposed removal from that position based on three charges: (1) falsifying information on a government employment form; (2) conduct unbecoming of a police officer; and (3) failure to maintain a requirement of his position, namely, the ability to operate a motor vehicle.

As to the first charge of falsification, on July 23, 2008 when he was applying for his police officer position, Mr. Tyler answered "No" to a question on employment form OF-306 that asked whether he had been convicted, imprisoned, put on probation, or been on parole for any felonies, misdemeanors, or other offenses in the last 10 years.    The form instructions stated that that traffic violations resulting in fines of $300 or less could be omitted.  Despite his answering "No", Mr. Tyler had in fact been convicted on December 19, 2002 in Willingboro, New Jersey of driving while intoxicated and had his license revoked for a two year period, in addition to being sentenced to 30 days of community service and charged $855 in fines and court fees.  Mr. Tyler reaffirmed his answers

by signing the same form OF-306 again on August 18, 2008 after his appointment to the police officer position. It was not until January 19, 2009, on a form SF-86 completed by Mr. Tyler at that time, that he answered "Yes" to the question of whether he had been arrested or convicted in the last 7 years. At that point, Mr. Tyler listed two prior convictions, though he ostensibly supplied the wrong date of June 2001 for his December 19, 2002 conviction in Willingboro, and mischaracterized the extent of the penalties imposed as only a license suspension.

As to the second charge of conduct unbecoming of a police officer, Mr. Tyler was arrested on August 21, 2009 for driving while intoxicated in Washington, DC. He had struck a truck, causing some minor damage, and was described by the arresting officer as "incoherent," unable to recite the alphabet beyond the letter "c," and unable to count using his fingers past the number one. His blood alcohol content was 0.31, more than three times the legal limit. Mr. Tyler was again arrested for driving under the influence of alcohol in Hyattsville, MD on October 21, 2009, after being pulled over for erratic driving and failing a number of field sobriety tests. A preliminary breathalyzer test revealed that Mr. Tyler had a blood alcohol content of 0.263. While being transported to the police station, Mr. Tyler threatened the arresting officer with physical violence and had to be restrained. He also refused to complete additional breath alcohol content testing. Mr. Tyler later failed to appear for a court hearing regarding the Maryland incident, and a warrant was issued for his arrest.

As to the third charge of failure to maintain a condition of his employment, on November 9, 2009 Colonel Judith Robinson suspended and ultimately revoked Mr. Tyler's base driving privileges. This revocation was due to Mr. Tyler's Maryland arrest, his admissions of drunk

driving, and his refusal to submit to having his blood alcohol content measured by the Maryland Police Department.

After Mr. Tyler was given notice of the decision to remove him from his position, he was given an opportunity to respond. Raymond Wharton, Director of Emergency Services at Fort Detrick, rejected all of Mr. Tyler's attempts to explain away the charges and made Mr. Tyler's removal effective March 27, 2010. Mr. Tyler's allegation that he misunderstood the form OF-306's instructions was found not credible since the form very clearly required disclosure of the December 19, 2002 conviction. While Mr. Tyler disagreed with portions of the arresting officer's account of the events in Hyattsville, MD, he did admit to drinking and driving. Mr. Wharton also rejected Mr. Tyler's excuse for missing his court date—that the notice to appear was sent to the wrong address—stating that Mr. Tyler had an obligation to stay on top of such scheduling to ensure he appeared as required. That an unrelated medical disability previously limited Mr. Tyler's ability to operate a motor vehicle, and that he had not operated a government vehicle since January 2009, was deemed irrelevant to the fact that his revocation of driving privileges makes him unable to meet a condition of his employment. Overall, Mr. Tyler's conduct was found more than sufficient to demonstrate that he was unfit to continue as a police officer in a position of such paramount public trust and responsibility.

After his removal became effective on March 27, 2010, Mr. Tyler appealed to the MSPB, where he was represented by counsel until May 18, 2010. At a pre-hearing status conference on June 14, 2010, the Army proposed to call Colonel Robinson, Mr. Wharton, and Mr. Tyler as witnesses. Mr. Tyler later called the administrative judge ("AJ") and asked if he could offer his first-line supervisor

Chief Sherieka as a witness. The AJ told Mr. Tyler that his request was untimely, and so Mr. Tyler indicated that he would rather not have a hearing and would prefer that the case be decided on the written record. The AJ asked Mr. Tyler to formally withdraw his request for a hearing, but instead Mr. Tyler submitted a motion to delay the hearing and offer five witnesses of his own. Mr. Tyler's motion was denied as untimely and the hearing proceeded on June 18, 2010 without Mr. Tyler's witnesses.

The AJ's initial decision affirmed Mr. Tyler's removal. While Mr. Tyler contended that he believed his 2002 conviction was a mere traffic violation, not a criminal violation requiring disclosure, and that a background investigator told him to just sign the form, the AJ rejected these contentions as not credible, or at a minimum showing a reckless disregard for the truth. The AJ also rejected Mr. Tyler's contention that he should not be held accountable for the Hyattsville, MD arrest because the charge was ultimately dismissed by the court. As the AJ explained, the issue is whether the underlying act of driving while intoxicated—to which Mr. Tyler admitted— was recklessly unsafe conduct unbecoming of a police officer, not whether Mr. Tyler was convicted for his actions. As to Mr. Tyler's failure to appear for his court hearing in connection with the Hyattsville charges, the AJ found that Mr. Tyler could not be held responsible for the arresting officer's mistake in entering the wrong address for Mr. Tyler, particularly since Mr. Tyler made every effort to appear before the court once the error became known to him. Lastly, the AJ noted that Mr. Tyler did not deny his inability to drive a motor vehicle on base once his privilege had been revoked, or that his ability to drive was a requirement of his position. The AJ therefore concluded that Mr. Tyler's conduct and circumstances seriously undermined his ability to continue serving as a

police officer, particularly given the high standards of integrity and professionalism expected of police officers. The AJ noted that any of the three charges alone would be sufficient to justify Mr. Tyler's termination, and that all directly impacted his ability to continue to serve in his then current position.

Upon petition for review, the MSPB affirmed. One new argument made by Mr. Tyler to the MSPB was that the AJ erred by denying his request to present witnesses at the hearing. He argued that the untimeliness of his request should be excused because he was in a transient living situation due to an apartment fire. The MSPB rejected this argument, finding that the AJ has considerable discretion to control the manner of proceedings, and that even if Mr. Tyler's excuse constituted good cause, he failed to explain the substance of the intended testimony to show that it would have been material to the outcome of the appeal. A2-3 (citing 5 C.F.R. § 1201.41(b) and *Sanders v. SSA*, 2010 M.S.P.B. 155, P10 (M.S.P.B. 2010) ("[A]n administrative judge has wide discretion to control the proceedings, including the authority to exclude testimony she believes would be irrelevant, immaterial, or unduly repetitious.")). Mr. Tyler also argued that he is an alcoholic, but did not request special accommodation other than to be reinstated. The MSPB rejected this argument because, even if it were presented as an affirmative defense in the form of a disability, the existence of such a condition does not excuse one from having to meet the qualifications and standards for employment or job performance, even if the failure to qualify or perform is related to the alcoholism. 42 U.S.C. § 12114(c)(4) (2006). Finding these arguments without merit, and that the underlying charges and determinations were fully supported by the record, the MSPB made the decision of the AJ final. This appeal followed.

## II.  Discussion

Our review of decisions of the MSPB is limited by statute.  We may only set aside agency actions, findings, or conclusions if we find them to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence . . . ."  5 U.S.C. § 7703(c) (2006).

On appeal, Mr. Tyler continues to seek reinstatement to his position as a police officer by challenging the merits of the charges against him.  He also reiterates his argument that the MSPB should have allowed him to present witnesses at his hearing despite his untimeliness in offering the witnesses.  He attributes at least some of the blame for his untimeliness to the fact that he was no longer represented by counsel as of a month before the hearing, leaving him to proceed *pro se.*  Mr. Tyler believes that he received an unfair trial because he was forced to represent himself.

First, as to the merits of Mr. Tyler's termination, substantial evidence supports the MSPB's findings that Mr. Tyler falsely completed his form OF-306 by intentionally omitting his prior driving while intoxicated conviction, or at least completed the form with reckless disregard for the truthfulness of his response.  The form's instructions were clear that the December 2002 conviction should have been disclosed, and we cannot second guess the prior determinations made as to the credibility of Mr. Tyler's belief that he need not disclose the conviction.  *Gibson v. Department of Veterans Affairs*, 160 F.3d 722, 725 (Fed. Cir. 1998) (explaining that credibility determinations are "virtually unreviewable" on appeal).  Substantial evidence also supports the MSPB's finding that Mr. Tyler did

indeed conduct himself in a manner unbecoming of a police officer via his multiple incidents of driving while intoxicated, and that revocation of Mr. Tyler's base driving privileges left him unable to perform all of his required job duties. As the MSPB concluded, any of these three charges is sufficient to justify Mr. Tyler's termination, especially in light of the high degree of public trust and responsibility given to police officers.

Second, regarding Mr. Tyler's argument that he should have been permitted to present his belatedly offered witnesses, we agree with the MSPB that the AJ's exclusion of those witnesses was not an abuse of discretion. Not only was Mr. Tyler's offer untimely, but we see nothing in the record as to the expected content of the witnesses' testimony to indicate that the testimony could have had a material impact on the proceedings. Absent such evidence, even if Mr. Tyler had good cause for the delay, we cannot conclude that the exclusion of the witnesses' testimony was harmful error. *See Nichols v. U.S. Postal Service*, 80 M.S.P.R. 229, ¶7 (1998) (refusing to disturb AJ's decision to exclude witnesses because the appellant did not explain how he was prejudiced by their exclusion).

Lastly, as to Mr. Tyler's argument that he did not receive a fair trial because he was proceeding *pro se* at the time of the hearing, we note that Mr. Tyler was represented by counsel until a month before the hearing, and that during this time he did not indicate an intention to offer witnesses. The record does not, moreover, reflect that Mr. Tyler requested a continuance for the purpose of seeking new counsel. In any event, civil litigants are not entitled to representation, and the absence of counsel does not make proceedings inherently unfair. *Lariscey v. United States*, 861 F.2d 1267, 1270 (Fed. Cir. 1988) ("The [Supreme] Court [has] stated the strong presumption that

a right to appointed counsel exists only when the indigent may lose his/her personal freedom if the action is lost . . . . Beyond this narrow framework, the Supreme Court has not recognized a constitutional right to appointed counsel in civil matters."). We are aware of no authority by which the MSPB was obligated to provide counsel to Mr. Tyler.

## III. Conclusion

Because this appeal presents no basis for this court to disturb the decision of the MSPB, its judgment is hereby

**AFFIRMED**

Costs

No costs.